Filed 11/25/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H040625 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 195138) |
| v. | |
| ABEL RODOLFO ESPARZA, | |
| Defendant and Appellant. | |
| In re ABEL RODOLFO ESPARZA, | H042725 |
| on Habeas Corpus. | |

The Three Strikes Reform Act of 2012 (hereafter the Act or Proposition 36) created a post conviction release proceeding for third strike offenders serving indeterminate life sentences for crimes that are not serious or violent felonies. If such an inmate meets the criteria enumerated in Penal Code section 1170.126, subdivision (e),[1] he or she will be resentenced as a second strike offender unless the court determines such resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

On September 12, 2013, after the Act went into effect, defendant filed a petition for recall of sentence and request for resentencing under the Act.[2] At the time defendant

---

[1] All further unspecified statutory references are to the Penal Code.

[2] Originally, defendant filed his petition on November 14, 2012. That petition was dismissed without prejudice when defendant's public defender was relieved by the court and counsel hired by defendant's family substituted in. New counsel asked for a continuance to get up to speed on the case, which, following a brusque discussion
(continued)

filed a petition for resentencing, defendant was serving a term of 25 years to life for two felony convictions for driving under the influence of alcohol (DUI) with three or more prior convictions for DUI (Veh. Code, § 23152, subds. (a), (b)). DUI with three or more prior convictions for DUI is neither a violent felony as defined by section 667.5, subdivision (c), nor a serious felony as defined by section 1192.7, subdivision (c).

Ultimately, on January 16, 2014, after a hearing at which defendant's brother testified, the court denied the recall and resentencing petition. Defendant filed a timely notice of appeal.

On appeal, defendant claims that because the trial court applied the wrong definition of unreasonable risk of danger to public safety, this court must reverse the denial of his recall and resentencing petition. Further, he asserts that because the trial court placed the burden of proof on him, his due process rights were violated. In addition, defendant maintains that he had a right to a jury trial. Alternatively, if his request for a jury trial was not preserved for appeal, his due process rights were violated since the court denied his request for a continuance, which resulted in the dismissal of his petition. Finally, defendant argues that along with his right to a jury trial he was entitled to a standard of proof beyond a reasonable doubt and his attorney's failure to assert that standard deprived him of the effective assistance of counsel.

In addition, Esparza has filed a petition for writ of habeas corpus, which this court ordered considered with the appeal. In his petition, Esparza contends that trial counsel was ineffective in failing to call as a witness a prison expert to testify in support of his Proposition 36 resentencing petition. Further, Esparza asserts that the trial court's finding in his 1997 case that his priors were strikes violated his constitutional right to due process

---

between counsel and the court, the court denied. Instead, the court dismissed the petition and told defendant's counsel to file a new petition.

2

under *Descamps v. United States* (2013) 570 U.S. __, __ [133 S.Ct. 2276, 2288] (*Descamps*).

For reasons that follow we agree with defendant that the court erred below and that he is entitled to a new sentencing hearing.

### The Recall and Resentencing Petition

In his recall petition, defendant argued that his current status showed that he was not dangerous. Attached to the petition were letters indicating that defendant had been accepted into the Options outpatient re-entry program, an abstinence-based drug and alcohol treatment program; that he had been accepted into the Salvation Army Adult Rehabilitation Center in San Jose; that he had been attending the Saturday Alcoholics Anonymous program at San Quentin for six months beginning in the first half of 2013; and that his C-file showed that had been participating in AA since May of 2012. In addition, defendant submitted a two-page relapse prevention plan in which he outlined how he would avoid relapsing and returning to the use of drugs and alcohol. Finally, defendant submitted a letter to the court in which he acknowledged that his criminal record was "bad and really questionable", and in which he indicated remorse for his past actions. He wrote "I . . . grieved the passing of life and the injury to another. I am appalled of my causing such pain to the family of the deceased."[3]

### Prosecution's Opposition to Resentencing

The prosecutor argued that if defendant were resentenced and released he would be a serious danger to public safety. The prosecutor noted that defendant had 14 alcohol-and drug-related criminal driving convictions, three convictions for being under the influence of narcotics, and 17 convictions for driving on a suspended or revoked license. The prosecutor pointed out that defendant's record stretched back to 1971 and that previously defendant's driving had resulted in the death of one person and

---

[3] In 1985, defendant was convicted of one count of vehicular manslaughter.

3

the severe injury of that person's wife.[4]  The prosecutor asserted that the danger of releasing defendant was "great" because "he has shown, over the course of 26 years that he continually drives while intoxicated with alcohol or high on drugs, but also because his attitude, as expressed . . . both in this case and in the case involving his strike priors, indicates a refusal to acknowledge the terrible danger he presents each and every time he gets in a car while high on alcohol and drugs.  In his statement to the probation officer in this case, the defendant says he is 'guilty' in this case, and even admits he was 'pretty high' before he left the bar in his car, but nevertheless 'believes he was driving safely.'  After 26 years of alcohol education, drug programs, numerous grants of probation with drug and alcohol counseling, this man had [*sic*] not changed his behavior and refused to recognize that driving while under the influence of alcohol presented any danger at all, even after he killed someone!  He did 'not think he could have injured anyone in the current case because he was not 'totally gone.'  He was AT LEAST a .26 at the time.  He refused to accept responsibility for his actions and blamed other people for his problems. He blamed his most recent convictions for DUI on his relationship with he [*sic*] ex-girlfriend ' . . . had he not became involved with her, he would not have those convictions.'  Defendant blames others, expresses no remorse for his continually putting the community at risk by driving and intoxication choices, and is absolutely going to continue with this behavior over the next 25 years, just as he has for the past 26 years. There is no law or court order which would stop this man from endangering our community besides keeping him behind bars."

The prosecutor went on to conclude, "Time after time, one year after another, for 26 years he has continued to commit crimes.  At this point, the People of Santa Clara County and the State of California deserve protection from his continual criminal conduct.  The intent of the 'Three Strikes' law was to remove dangerous criminals from

---

[4] We assume that the prosecutor was referring to defendant's 1985 case.

4

our streets and towns, so that the rest of the law abiding citizenry can enjoy the menace of criminal behavior such as that in which the defendant engages."[5]

As to defendant's record while incarcerated, all the prosecutor could point to in defendant's record was a "Conviction" for "Possession of Contraband."[6]

*The Recall Hearing*

Joel Esparza, defendant's brother—a registered nurse—testified that he was prepared to help his brother with housing, food, clothing, and the basic necessities of life should his brother be released from prison. Mr. Esparza said that his brother had learned to avoid alcohol and drugs and had expressed remorse for a vehicular manslaughter conviction that his brother sustained wherein his brother killed a man and seriously injured the man's wife.

At the end of the hearing, defendant's counsel argued that defendant's records "show a durable and sustained absence from the use of alcohol" while defendant has been in prison. Counsel pointed out that in the 17 years defendant has been in prison he "has not done anything wrong." Counsel asserted that defendant had made a lifetime commitment never to drink alcohol again and that the recidivism rate for 60-year-olds such as defendant was "very, very, low."

The prosecutor countered that defendant posed an unreasonable risk of danger to public safety. The prosecutor conceded that for violent offenders the older they get the recidivism rate lowers, but stated that defendant was an alcoholic and "[t]hat never goes

---

[5] We do not understand what the prosecutor meant by this. Furthermore, it appears that the prosecutor's argument is taken almost directly from the prosecution's opposition to defendant's request in his 1997 case for the court to exercise its discretion and strike one of his strike convictions. On this court's own motion we have taken judicial notice of the record in defendant's 1997 case (*People v. Esparza* (Feb. 8, 1999, H017413) [nonpub.opn.].) (See Evid. Code, §§ 452, subd. (d), 459.)

[6] Defendant's prison record does not support the prosecutor's assertion that defendant was convicted for possession of contraband.

5

away." The prosecutor referred to defendant's never taking advantage of drug and alcohol programs for 26 years and again noted that defendant blamed other people for what happened. The prosecutor continued, "I do find it ironic that attached to counsel's papers that during the 16 years that he's been in custody there's no evidence of AA meetings or any type of drug or alcohol treatment that he received in prison. It wasn't unless [*sic*] two years ago when he knew he potential [*sic*] could be able to present to the Court and be resentenced that he finally took action, and I think it's only been six months that he's gone to AA meetings and he's finally programmed and looked for options that would be able to help this issue. [¶] And I would just like to state that maybe he didn't drink in prison, maybe he did. We don't know. All we know is that he wasn't caught drinking in prison and disciplined for it. But it is hard to get access to alcohol while you're in prison. So who is to say when he gets out when he is an alcoholic, for 26 years when he was drinking, programming, being told not to drink, being arrested, spending time in jail, spending time in programs, he continued to drink for 26 years. We don't know what he did in prison. There's no evidence of a [*sic*] that. We just know he wasn't caught. But the fact is he's still an alcoholic." The prosecutor concluded, "There's no assurance he's not going to drink again, and we still do see that he's a danger to the community."

The court said that it had never seen a case where someone had 14 convictions for DUI. The court did not doubt that defendant had behaved well in prison because he did not have a history of being a violent person—the court found that defendant "is an alcoholic who drinks and drives." The court recited defendant's criminal history for the record—41 misdemeanor convictions and three felonies. The court noted that defendant had driven on a revoked or suspended license 17 times. The court mentioned defendant's 1985 conviction for vehicular manslaughter. The court thought that since defendant was sentenced to prison on that case—which involved driving under the influence—defendant might have learned his lesson and made a lifestyle change. The court noted that he had

6

not because after he was paroled in 1991, defendant was found to be drunk in public in 1993, picked up two more DUI's, one in 1993 and one in 1994 and another in 1996 after he was paroled.  Further, his most recent DUI offenses were in 1997.  The court found that "[p]robably in the scheme of things" defendant's prison record was "the most stellar" the court had seen.  The court concluded that defendant was "an alcoholic who cannot control himself in the community."

The court went on to say that defendant had not started his AA meetings until "April of last year, so he didn't do anything with respect to trying to help himself with respect to his alcohol problem.  And you can perhaps infer, and I don't know if this is a fact, but maybe you can infer that he did this simply because the law had changed and he would be eligible to be reconsidered under the law for resentencing because of the nature of the commitment, which is not a serious violent felony.  But he didn't start [until] April of 2013.  That's what the record reflects that was submitted to the Court."[7]

Ultimately, the court concluded that it was "not willing to make a decision in this case that [defendant is] not a danger in the community.  I have very grave concerns that . . . in fact you would be a danger to the community because of your alcohol problem and because of your prior history."  Accordingly, the court denied defendant's petition for resentencing.

*Discussion*

At the outset, we note that in *Teal v. Superior Court* (2014) 60 Cal.4th 595, the California Supreme Court held that the denial of a motion for recall and resentencing is an appealable post conviction order.  (*Id*. at pp. 599-601.)

_____

[7] In fact, the record reflects that defendant had been attending AA meetings during 2012.

*Definition of Unreasonable Risk of Danger to Public Safety*

*Background*

In order to be eligible for resentencing as a second-strike offender under Proposition 36, the inmate petitioner must satisfy the three criteria set out in subdivision (e) of section 1170.126. "An inmate is eligible for resentencing if: [¶] (1) The inmate is serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or subdivision (c) of Section 1170.12 for a conviction of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7. [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12. [¶] (3) The inmate has no prior convictions for any of the offenses appearing in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clause (iv) of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." (§ 1170.126, subd. (e).)

If the inmate satisfies all three criteria, as did defendant, he or she "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising this discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

8

Effective November 5, 2014, the voters approved Proposition 47, which, among other things, "[r]equire[s] misdemeanors instead of felonies for nonserious, nonviolent crimes [such as] petty theft and drug possession, unless the defendant has prior convictions for specified violent or serious crimes." (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 3, p. 70 (Voter Information Guide).) Proposition 47 added section 1170.18 to the Penal Code, under which "[a] person currently serving a sentence for a conviction, whether by trial or plea, of a felony or felonies who would have been guilty of a misdemeanor under the act that added this section . . . had this act been in effect at the time of the offense may petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case [and] request resentencing . . . ." (§ 1170.18, subd. (a).) If subdivision (a) of this provision is satisfied, subdivision (b) requires recall and resentencing "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) Subdivision (c) provides: "*As used throughout this Code,* 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c), italics added.)[8]

Defendant argues that Proposition 47's definition of unreasonable risk of danger to public safety necessarily governs the identical section 1170.126 standard.[9]

---

[8] These violent felonies, sometimes referred to as super strikes (see, e.g., *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1092), include specified violent sex offenses, any homicide offense or attempted homicide offense defined in sections 187 through 191.5, solicitation to commit murder, assault with a machine gun on a peace officer or firefighter, possession of a weapon of mass destruction, or any serious or violent felony punishable in California by life imprisonment or death. (§ 667, subd. (e)(2)(C)(iv).)

[9] The issue of whether Proposition 47's definition of unreasonable risk of danger to public safety applies in Proposition 36 resentencing proceedings is pending before the California Supreme Court in *People v. Chaney* (2014) 231 Cal.App.4th 1391, review (continued)

9

Plainly, if considered solely as a matter of grammatical construction, Proposition 47's definition of "unreasonable risk of danger to public safety" undoubtedly is tied to the words "As used throughout this Code." However, such a literal construction is not to be adopted if it conflicts with the voters' intent shown in the official ballot pamphlet. (*People v. Briceno* (2004) 34 Cal.4th 451, 459; *People v. Osuna* (2014) 225 Cal.App.4th 1020, 1033-1034.) Nothing in the official ballot pamphlet for Proposition 47 hints at any impact on the procedure for resentencing Three Strike inmates. The explanation for that omission is plain.

Proposition 47 was intended to reduce penalties "for certain nonserious and nonviolent property and drug offenses from wobblers or felonies to misdemeanors." Those crimes were identified as "Grand Theft," "Shoplifting," "Receiving Stolen Property," "Writing Bad Checks," "Check Forgery," and "Drug Possession." (Voter Information Guide, *supra*, analysis by the Legislative Analyst pp. 35-36.) "This measure allows offenders currently serving felony sentences *for the above crimes* to apply to have their felony sentences reduced to misdemeanor sentences . . . . In addition, the measure states that a court is not required to resentence an offender currently serving a felony sentence if the court finds it likely that this offender will commit a specified severe crime." (*Id.* at p. 36, italics added.) This intent was echoed by the proponents of Proposition 47, who argued the measure "is sensible" in that it "Stops wasting prison space on petty crimes and focuses law enforcement resources on violent and serious crime by changing low-level, nonviolent crimes such as simple drug possession and petty theft from felonies to misdemeanors." (*Id.* at p. 38, Argument in favor of Prop. 47.) In sum, a key part of Proposition 47 is the resentencing procedure of section 1170.18, which is to some extent modeled on section 1170.126; however, there is no mention in the Voter

---

granted February 18, 2015, (S223676) and *People v. Valencia* (2014) 232 Cal.App.4th 514 review granted February 18, 2015, (S223825).

Information Guide of the passage of Three Strikes Reform Act, which occurred only two years before.

Furthermore, in Proposition 47, as noted *ante*, the electorate redefined several felonies as misdemeanors and extended the benefits of the law to current inmates similar to Proposition 36. Under the retroactive part of Proposition 47, similar to the retroactive part of Proposition 36, relief can be denied to unreasonably dangerous inmates. The new, narrower definition of "unreasonable risk of danger" in Proposition 47 is appropriate because the inmates who stand to benefit from Proposition 47 are now considered misdemeanants, or they would have been if they had committed their crimes after the passage of Proposition 47. As misdemeanants, in general, they as a class are less dangerous than recidivist felons with prior strike offenses. It is axiomatic that a felony is a more serious type of crime than a misdemeanor. It would be illogical to believe that the electorate intended to change Proposition 36 when in Proposition 47 it redefined some felonies as misdemeanors; to do so would be to treat felons whose underlying third crime is still a felony if committed today as if they were now misdemeanants.

Moreover, Proposition 47's definition of "unreasonable risk of danger to public safety" applies to "petitioners." (§ 1170.18, subd. (c).) However, Proposition 36 has a sunset clause. Without a showing of good cause, a three strikes inmate had until November 7, 2014 (two days after Proposition 47 became effective) to file a petition for recall of sentence. (§ 1170.126, subd. (b) [an inmate may file a petition for a recall of sentence, *within two years after the effective date of the act* that added this section or at a later date upon a showing of good cause].) Without a showing of good cause, the only "petitioners" who are able to petition for recall of sentence after November 7, 2014 are those who are eligible to petition for recall under section 1170.18. We must presume that the drafters of Proposition 47 were aware of this when they used the word "petitioner" in subdivision (c) of section 1170.18.

11

Before we constrain a court considering whether to release a former three strikes offender back to the streets, which we would do if we accepted defendant's arguments, we would need the most compelling proof that the voters intended what we see as an unreasonable and counterintuitive result. Defendant has not satisfied that burden on appeal.

*Right to a Jury Trial*

As noted, defendant filed his original recall and resentencing petition on November 14, 2012. Thereafter, the prosecution filed its opposition on March 8, 2013. Defendant filed his request for a jury trial on March 25, 2013. Defendant's original petition was dismissed without prejudice on August 1, 2013.

In essence, defendant argues that since there was only a court hearing on his petition for recall of sentence, the court deprived him of the jury trial he had requested.

The People assert that because the request for a jury trial was filed in connection with defendant's first petition that was dismissed and he did not file a new request after he filed his new petition, the request for a jury trial was rendered moot by the dismissal.

We are not persuaded by the People's argument. At the status hearing on October 18, 2013, the court noted that the prosecution and the defense had already filed their respective papers and defendant's newly retained counsel requested to file supplemental papers, to which the court agreed. We take this to mean that the court considered everything that had been submitted prior to the dismissal of defendant's initial petition to be preserved.

That being said, defendant's argument that he was denied his right to a jury trial is premised on his assertion that section 1170.126 creates a new statutory presumption for a two-strike sentence; he asserts that the statute mandates that the court impose the two-strike sentence unless a factual finding of dangerousness is made. We do not agree with defendant that a second-strike sentence is the presumptive sentence.

12

As we have explained, the language of subdivision (f) of section 1170.126 reads that a petitioner who meets the eligibility criteria "shall be resentenced [as a second strike offender] unless the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." It is not unreasonable to read this text to mean that a court "shall" impose a second-strike sentence unless "at the discretion of the court" the petitioner's original sentence of 25 years to life appears more appropriate because of an unreasonable risk of danger to the public. However, it is equally reasonable to read the text to mean that a court may select one of the two penalties (a second-strike sentence or the original life sentence) in the exercise of its discretion, with no presumption in favor of one or the other. "The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option." (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1371 (*Gutierrez*).) The text of subdivision (f) of section 1170.126 does not plainly indicate that a second-strike sentence is the presumptive sentence.

In sum, we do not agree with defendant that Proposition 36 creates a presumption in favor of a second-strike sentence. Such a conclusion comports with the plain language of the statute. Had voters intended to permit retention of an indeterminate term only in extraordinary cases, they would have said so in subdivision (f) of section 1170.126, rather than employing language that affords courts broad discretion to find dangerousness. In addition, they would not have afforded the trial court the power to consider any evidence it determined to be relevant to the issue as they did in subdivision (g)(3) of the statute. (See *Gutierrez*, *supra*, 58 Cal.4th at pp. 1371-1372 [examining legislative history and voter intent in attempt to resolve statutory ambiguity].)

Furthermore, the United States Supreme Court has clarified that its opinions regarding a defendant's Sixth Amendment right to have essential facts found by a jury

13

beyond a reasonable doubt do not apply to limits on downward sentence modifications. (*Dillon v. United States* (2010) 560 U.S. 817, 828 [taking the original sentence as given, any facts found by a judge at a modification proceeding do not serve to increase the prescribed range of punishment].)

Nothing in *Alleyne v. United States* (2013) 570 U.S. __, __ [133 S.Ct. 2151], cited by defendant, supports his views. As described by the California Supreme Court, in *Alleyne* "the United States Supreme Court held that the federal Constitution's Sixth Amendment entitles a defendant to a jury trial, with a beyond-a-reasonable-doubt standard of proof, as to 'any fact that increases the mandatory minimum' sentence for a crime." (*People v. Nunez & Satele* (2013) 57 Cal.4th 1, 39, fn. 6.) The denial of a recall petition does not increase the mandatory minimum sentence for a defendant's crime.

"The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners. Instead, it provides for a proceeding where the original sentence may be modified downward. Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1304-1305 (*Kaulick*).) We agree with *Kaulick* on this point.

In *Kaulick*, the defendant argued that the standard of proof applicable to the determination of dangerousness under section 1170.126, subdivision (f) should be beyond a reasonable doubt, reasoning that "a finding of dangerousness is a factor [that] justifies enhancing a defendant's sentence beyond a statutorily presumed second strike sentence." (*Kaulick, supra*, 215 Cal.App.4th at p. 1301.) The defendant argued that once he was found eligible for resentencing under the Act, he "was subject *only* to a second strike sentence, *unless* the prosecution established dangerousness." (*Kaulick, supra,* at p. 1302.)

The *Kaulick* court held that under the Act, effectively, a third strike indeterminate sentence is not recalled upon a finding of eligibility, before the trial court determines whether dangerousness is established. (*Kaulick, supra*, 215 Cal.App.4th at p. 1303.)

14

The court explained: "[D]angerousness is not a factor [that] enhances the sentence imposed when a defendant is resentenced under the Act; instead, dangerousness is a hurdle [that] must be crossed in order for a defendant to be resentenced at all. If the court finds that resentencing a prisoner would pose an unreasonable risk of danger, the court does not resentence the prisoner, and the petitioner simply finishes out the term to which he or she was originally sentenced." (*Ibid*., fn. omitted.) We agree with *Kaulick*'s reasoning and conclusion. We conclude that defendant did not have the right to a jury trial on the issue of whether he would pose an unreasonable risk of danger to public safety if he were resentenced as a second-strike defendant. (See § 1170.126(f).)[10]

Simply put, a denial of an inmate's petition does not increase the penalty to which that inmate is already subject, but instead removes the inmate from the scope of an act of lenity on the part of the electorate to which he or she is not constitutionally entitled. That the denial is based on a determination of dangerousness does not change that conclusion.

*Reasonable Doubt Standard of Proof*

Defendant argues that he was entitled to a standard of proof beyond a reasonable doubt and his attorney's failure to assert that standard deprived him of the effective assistance of counsel.

In essence, defendant maintains that dangerousness is a fact that must be found beyond a reasonable doubt. In *Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1306, the court considered this issue at length. The *Kaulick* court concluded that dangerousness "need not be established by proof beyond a reasonable doubt to a jury." (*Id.* at p. 1303.) The court held that "the proper standard of proof is preponderance of the evidence."

---

**[10]** Since we have concluded that defendant had no right to a jury trial on the issue of dangerousness under section 1170.126, subdivision (f), we need not address defendant's alternate claim that if his request for a jury trial was not preserved for appeal, the denial of his motion for a continuance violated his rights to due process and to a jury trial.

15

(*Id*. at p. 1305.)  As explained *ante*, the *Kaulick* court reasoned:  "The retrospective part of the Act is not constitutionally required, but an act of lenity on the part of the electorate. It does not provide for wholesale resentencing of eligible petitioners.  Instead, it provides for a proceeding where the original sentence may be modified downward.  Any facts found at such a proceeding, such as dangerousness, do not implicate Sixth Amendment issues.  Thus, there is no constitutional requirement that the facts be established beyond a reasonable doubt."  (*Id*., at pp. 1304-1305)  Defendant claims that "the d*ictum* of *Kaulick* that speaks to this issue was flawed."  We note that this "was not dicta because it was responsive to the issues raised on appeal and was intended to guide the parties and the trial court in resolving the matter following . . . remand.  [Citation.]"  (*Garfield Medical Ctr. v. Belshe* (1998) 68 Cal.App.4th 798, 806.)  In the introduction to its opinion, the *Kaulick* court said that it "will discuss several issues likely to arise on remand, including the prosecution's burden of proof on the issue of dangerousness."  (*Kaulick*, *supra*, at p. 1286.)

As the *Kaulick* court explained, the proper standard of proof is preponderance of the evidence.  "Evidence Code section 115 provides that, '[e]xcept as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence.'  There is no statute or case authority providing for a greater burden, and [defendant] has not persuaded us that any greater burden is necessary.  In contrast, it is the general rule in California that once a defendant is eligible for an increased penalty, the trial court, in exercising its discretion to impose that penalty, may rely on factors established by a preponderance of the evidence.  [Citation.]  As dangerousness is such a factor, preponderance of the evidence is the appropriate standard."  (*Kaulick*, *supra*, 215 Cal.App.4th at p. 1305, fns. omitted.)

We agree with *Kaulick*'s analysis.  Similarly, we conclude that the proper standard of proof is preponderance of the evidence.  Since defendant was entitled only to a

16

standard of proof by a preponderance of the evidence, his counsel cannot be faulted for failing to assert that he was entitled to a standard of proof beyond a reasonable doubt.

*Burden of Proof*

*Background*

At the hearing on defendant's resentencing petition, after calling the case, the court indicated that the case had been assigned for hearing; that the People had filed opposition; that the court had read that opposition and defendant's reply; and that unless there were any motions, the proceedings would start with the presentation of evidence. Immediately, the court told defendant's counsel to "[g]o ahead." Defendant's counsel told the court that "the People have the burden, but I'm happy to proceed this way." The court responded, "You're not going to what?" Defendant's counsel told the court, "I believe the People have the burden but I am happy to proceed in this matter. My client is not intending to testify but I would like to call my client's brother . . . ." The court said that counsel could call a witness.

After defendant's brother Joel testified, the court asked defense counsel if she had any more witnesses. Defense counsel, Ms. Bucknell, said that she did not intend to present any other witness. The following colloquy occurred:

"THE COURT: Okay. So you rest as far as the presentation of any further evidence?

"[MS. BUCKNELL]: Yes, unless the Court wishes to address my client.

"THE COURT: No. [¶] On behalf of the People, Ms. Schon?

"[MS. SCHON]: No witnesses, Your Honor.

"THE COURT: Okay, so that concludes the testimony. [¶] Now is the opportunity of counsel to address the Court by way of any argument. [¶] Ms. Bucknell."

Immediately, defendant's counsel began her argument to the court.

Defendant argues that implicitly the court imposed the burden of proof on him and required him to prove he had rehabilitated in violation of his due process rights.

17

The People argue that both defense counsel and the prosecutor recognized that the People have the burden of proof and the trial court is presumed to have known and applied the applicable law.

Certainly, "Evidence Code section 664 provides that '[i]t is presumed that official duty has been regularly performed' and scores of appellate decisions, relying on this provision, have held that 'in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law.' [Citation.]" (*Ross v. Superior Court* (1977) 19 Cal.3d 899, 913.)

At the time of defendant's hearing, there was only one published case that had discussed who had the burden of proof in a recall and resentencing hearing. As we have explained, *Kaulick*, found that the prosecution bears the burden of establishing "dangerousness" by a preponderance of the evidence against a claim the *Apprendi* line of cases requires proof beyond a reasonable doubt. (*Kaulick*, *supra*, 215 Cal.App.4th at pp. 1301-1302.) Thus, at the time of defendant's hearing it cannot be said that it was "established law" that the prosecution had the burden of proof in a recall and resentencing hearing. Furthermore, we reject the People's argument that since the court had read the parties' pleadings and the prosecution had no witnesses to present, the "court's common sense approach" for defense counsel to go first "did not demonstrate that 'it was operating as if [defendant] bore the burden of proof.' " If that is so, we have to question why the court asked the prosecutor if she wished to present any witnesses *after* defendant's counsel rested; why the court directed defendant's counsel to address the court first "by way of any argument"; and why the court stated that it was "not willing to make a decision in this case that [defendant is] not a danger in the community."[11]

---

[11] The fact that the court phrased its statement this way lends more support to our conclusion that the court was looking to defendant to prove that he would not be a danger to public safety if the court released him back into the community.

18

Burden of proof, as distinguished from this court's scope of review, is an evidentiary concept. It means "the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (Evid. Code, §§ 115, 605, 606.) "Burden of proof" encompasses two separate burdens. "One burden is that of producing evidence, satisfactory to the judge, of a particular fact in issue. The second is the burden of persuading the trier of fact that the alleged fact is true." (2 McCormick, Evidence (7th ed. 2013) Burdens of Proof and Presumptions, § 336, p. 643, fns. omitted.)

Preponderance of the evidence means "evidence that has more convincing force than that opposed to it." (*Glage v. Hawes Firearms Co.* (1990) 226 Cal.App.3d 314, 324.) That standard is met when "evidence on one side outweighs, preponderates over, is more than, the evidence on the other side, not necessarily in number of witnesses or quantity, but in its effect on those to whom it is addressed." (*People v. Miller* (1916) 171 Cal. 649, 652.) In light of this standard, the burden of proof becomes relevant to the determination only if the evidence is evenly balanced in the mind of the fact finder. (*Id.* at p. 654.)

Plainly, the court did not view the relevant facts as supporting both positions equally. The court described defendant's criminal record—41 misdemeanors, three felonies, 17 times driving on a revoked or suspended license, and a manslaughter conviction. Although the court found defendant's prison record to be "the most stellar" the court had seen for somebody who had been in prison for 16 years, it was the nature of the offenses that defendant committed that concerned the court; and the inference the court drew that defendant only started his AA meetings "simply because the law has been changed and he would be eligible to be reconsidered under the law for resentencing because of the nature of the commitment, which is not a serious or violent felony."

The Act left the dangerousness determination to the court's discretion, considering defendant's criminal history, his conduct while incarcerated, and any other relevant

19

evidence. (§ 1170.126, subd. (g).) Even though the trial court here failed to correctly assign the burden of proof, that failure does not amount to prejudicial error or a due process violation *if* the prosecution met its obligation under Evidence Code section 115 of proving the facts on which the court based its dangerousness determination.

Certainly, the prosecution produced documents from defendant's prison file, which included the probation report from his 1997 case. In that case, defendant was convicted of two counts of DUI with three or more prior DUI convictions (Veh. Code, 23152, subd. (b)), one count of resisting, delaying or obstructing a police officer, and one count of driving on a suspended license (Veh. Code, § 14601.2, subd. (a)). The probation report documented defendant's prior criminal record—3 felonies,[12] which were drug and alcohol related, 41 misdemeanors, which included 13 DUI's, 17 driving with a suspended or revoked license and three drug-related charges.

Nevertheless, the court based its determination of current dangerousness not only on defendant's prior criminal record, but also on the fact that the court could infer from the evidence before it that defendant was not really sincere in his efforts in AA since defendant had only started his AA classes in April 2013. The prosecution failed to prove that fact. In fact, the records before the court showed that at the time of the hearing defendant had been attending AA meetings for nearly two years starting in the second quarter of 2012, not six months as the court found, and not at a time when it could be inferred that he did so because the law had changed—the Act was not passed until November 6, 2012, several months after defendant began his AA meetings. (See *Yearwood*, *supra*, 213 Cal.App.4th at p. 167 [the voters approved Proposition 36, the Three Strikes Reform Act of 2012 on November 6, 2012].) Moreover, the prosecution presented no evidence that defendant's commitment to AA was insincere.

---

**12** Two of these felonies were strikes—vehicular manslaughter and DUI with personal infliction of great bodily injury.

20

In this case, the trial court's analysis became disconnected from the evidence presented. Whether we review this as a violation of defendant's due process rights because the prosecution failed to carry its burden,[13] or abuse of discretion by the trial court. (See *People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [trial court abuses its discretion when factual findings critical to decision find no support in record]) the result is the same. Defendant is entitled to a new recall and resentencing hearing at which the prosecution must present evidence that *currently* defendant poses an unreasonable risk of danger to public safety. To do so, the prosecution must present substantial evidence that

---

**13** With regard to due process, we do not speak of prejudice; if there is a due process violation prejudice is a part of the violation. On this point, the United States Supreme Court has undertaken different approaches depending on the context in which the violation occurs and the type of violation. One view is that there either is or there is not a due process violation, such a violation being generally understood, with regard to trial errors, to be a defect that rendered the trial fundamentally unfair. (See *Gagnon v. Scarpelli* (1973) 411 U.S. 778, 790 [fundamental fairness—the touchstone of due process—will require that the State provide at its expense counsel for indigent probationers or parolees].) Accordingly, if there is a due process violation, " '[i]t is unnecessary to add a separate layer of harmless-error analysis . . . .' " (*Kyles v. Whitley* (1995) 514 U.S. 419, 436, fn. 9 [it is unnecessary to add a separate layer of harmless-error analysis to an evaluation of whether a petitioner in a habeas case has presented a constitutionally significant claim for ineffective assistance of counsel].) "[O]nce a reviewing court applying [a review for materiality] has found constitutional error there is no need for further harmless-error review." (*Id.* at p. 435.) However, elsewhere, the high court has intertwined the consideration of prejudice and due process violations. "[I]f [defendant] succeeds in demonstrating 'cause and prejudice,' he will at the same time succeed in establishing the elements of his . . . due process claim." (*Banks v. Dretke* (2004) 540 U.S. 668, 691.) In *Bradshaw v. Stumpf* (2005) 545 U.S. 175, the court implied that an inquiry into both a due process violation and prejudice is valid appellate procedure. (*Id.* at p. 187 [we express no opinion on whether the prosecutor's actions amounted to a due process violation, or whether any such violation would have been prejudicial].) The applicable standard may depend on the type of due process claim; for example, the due process claim addressed in *Kyles* contains a materiality component and so prejudice analysis may be superfluous. Here, it was fundamentally unfair for the court to place the burden of proof on defendant to show that he was no longer a danger to public safety and to then misconstrue the evidence presented by the prosecution.

that is the case.[14]  By definition, "substantial evidence" requires *evidence* and not mere speculation.  In any given case, one "may *speculate* about any number of scenarios that may have occurred . . . .  A reasonable inference, however, 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.  [¶]  . . .  A finding of fact must be an inference drawn from evidence rather than . . . a mere speculation as to probabilities without evidence.' " (*Morris*, *supra*, 46 Cal.3d at p. 21, disapproved on an unrelated point in *In re Sassounian* (1995) 9 Cal.4th 535, 543, fn. 5.)

We make the following observations for the benefit of the trial court on remand. In discussing the "some evidence" standard applicable in parole cases, the California Supreme Court has stated:  "This standard is unquestionably deferential, but certainly is not toothless, and 'due consideration' of the specified factors requires more than rote recitation of the relevant factors with no reasoning establishing a rational nexus between those factors and the necessary basis for the ultimate decision—the determination of current dangerousness." (*In re Lawrence* (2008) 44 Cal.4th 1181, 1210 (*Lawrence*).)

Although we decline to decide how and to what extent parole cases inform the decision whether to resentence a petitioner under the Act or our review of such a decision, we believe that the proper focus is on whether the petitioner *currently* poses an unreasonable risk of danger to public safety.  (Cf. *In re Shaputis* (2008) 44 Cal.4th 1241, 1254 (*Shaputis*); *Lawrence*, *supra*, 44 Cal.4th at p. 1214.)  Further, we believe that a trial court may properly deny resentencing under the Act based solely on immutable facts such as a petitioner's criminal history "*only* if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety.  [Citation.]" (*Lawrence*, *supra*, at p. 1221.)  " '[T]he relevant inquiry is whether [a petitioner's prior

---

**14** Evidence is substantial only if it " 'reasonably inspires confidence and is of "solid value." ' [Citation.]" (*People v. Morris* (1988) 46 Cal.3d 1, 19 (*Morris*).)

22

criminal and/or disciplinary history], when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years [later]. This inquiry is . . . an individualized one, and cannot be undertaken simply by examining the circumstances of [the petitioner's criminal history] in isolation, without consideration of the passage of time or the attendant changes in the inmate's psychological or mental attitude. [Citation.]' [Citation.]" (*Shaputis*, *supra*, at pp. 1254-1255.)

*Defendant's Writ Petition*

In his writ petition, defendant claims that he was denied the effective assistance of counsel. Specifically, he asserts that his trial counsel failed to adequately investigate and present a prison expert at his Proposition 36 resentencing hearing to explain to the court how extraordinary it was for defendant not to have had a single disciplinary infraction in 16 years; to explain how prevalent the use of alcohol and drugs are within the California prison system and in that context, for an alcoholic inmate not to have a single disciplinary infraction in 16 years, which reflects a commitment to sobriety; to explain why residential treatment at the initial phase of reentry would likely facilitate a relapse-free life for defendant; to explain how difficult it is in prison to regularly attend AA meetings; and to explain how his recent and regular attendance further bolsters the likelihood that defendant will remain clean and sober out of custody.

We sought and received informal opposition to defendant's writ petition and an informal reply from defendant on this issue. However, since we must reverse the lower court and remand for further proceedings, the issue raised is moot.[15]

As to defendant's other contention that the trial court's finding in his 1997 case that his priors were strikes violated his constitutional right to due process under

---

[15] In his informal reply to the People's informal response to his writ petition, defendant requests that we issue the writ *or* in the alternative vacate the order denying his Proposition 36 resentencing petition and remand the matter for a new hearing. Defendant has received the relief he requested.

*Descamps*, *supra*, 570 U.S. at p. __, [133 S.Ct. at p. 2288], this is an attempt to mount a collateral attack on a long final judgment.

Without doubt, all courts in California have original jurisdiction in writ proceedings. Article VI, section 10 of the California Constitution provides that "[t]he Supreme Court, courts of appeal, superior courts, and their judges have original jurisdiction in habeas corpus proceedings." This "original jurisdiction" means that a petition for writ of habeas corpus may be filed in the first instance in the superior court, Court of Appeal, or the California Supreme Court. (*People v. Romero* (1994) 8 Cal.4th 728, 737.)

Having original jurisdiction and exercising it are two separate things. It has long been the law in California that, while a Court of Appeal may have original jurisdiction in a habeas corpus proceeding, it has the discretion to deny a petition without prejudice if it has not been first presented to the trial court. As the Fifth District Court of Appeal explained more than half a century ago: "There is no question but that this court has jurisdiction to issue the writ of habeas corpus. [Citation.] But this court has discretion to refuse to issue the writ as an exercise of original jurisdiction on the ground that application has not been made therefor in a lower court in the first instance." (*In re Hillery* (1962) 202 Cal.App.2d 293, 294 (*Hillery*).) In *Hillery*, the petition, which was filed directly in the Court of Appeal, was denied because the petitioner did not show "that any extraordinary reason exists for action by this court, rather than by the Superior Court of the State of California . . . ." (*Ibid.*) The same can be said of this case. Since the appeal in this case is from the denial of a Proposition 36 resentencing hearing, it seems more appropriate that the Superior Court decide this issue in the first instance since it is collateral to the Proposition 36 resentencing hearing. Accordingly, as to this issue we deny the petition without prejudice to defendant's raising it in the superior court in the first instance.

24

*Disposition*

The order denying defendant's petition for recall of sentence is reversed and the matter is remanded to the trial court for further proceedings.

_____

ELIA, J.

WE CONCUR:


_____

RUSHING, P. J.


_____

PREMO, J.


*The People v. Esparza*; *Esparza on Habeas Corpus*
H040625; H042725

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court<br>Superior Court No. 195138 |
| Trial Judge: | Honorable Thomas Charles Hastings |
| Counsel for Plaintiff/Respondent:<br>The People | Kamala D. Harris<br>Attorney General<br><br>Gerald A. Engler<br>Chief Assistant Attorney General<br><br>Jeffrey M. Laurence<br>Acting Senior Assistant Attorney General<br><br>Violet M. Lee<br>Deputy Attorney General |
| Counsel for Defendant/Appellant:<br>Abel Rodolfo Esparza | Meredith Fahn<br>Under Appointment by the Sixth District<br>Appellate Program |

*The People v. Esparza*; *Esparza on Habeas Corpus*
H040625; H042725