Filed 6/3/16  P. v. Gonzalez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064128 |
| v. | (Super.Ct.No. SWF1401712) |
| ARTURO GONZALEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Becky Dugan, Judge. Reversed with directions.

Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Scott C. Taylor, and Warren J. Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Arturo Gonzalez, appeals an order denying his petition to designate his conviction for possession of a controlled substance (Health & Saf. Code, § 11377, subd. (a)) as a misdemeanor and resentence him under Penal Code section 1170.18, subdivision (a), which the California electorate passed as part of The Safe Neighborhoods and Schools Act (Proposition 47). The superior court denied the petition on the ground Gonzalez would pose an unreasonable risk of danger to public safety. Gonzalez contends the superior court abused its discretion by finding he was dangerous based on unsworn attorney statements and a police report from 1996.[1]

We agree and therefore reverse the order denying Gonzalez's petition and remand for further proceedings.

## I

## FACTUAL BACKGROUND

On August 5, 2014, Gonzalez pled guilty to one felony count of possessing a controlled substance. (Health & Saf. Code, § 11377.) The superior court imposed an upper term three year state prison sentence, a $40 court operations assessment, a $30

---

[1] Gonzalez also contends the superior court abused its discretion by finding he was dangerous based on its determination there was an unreasonable risk he would commit a sexual offense within the meaning of Penal Code section 290, subdivision (c). Gonzalez is correct that courts may deny otherwise eligible petitions only if there is "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (Pen. Code, § 1170.18, subds. (b), (c).) Because we reverse the dangerousness determination on another ground, we do not reach the issue of whether this error also requires reversal.

criminal conviction assessment fee, a $300 restitution fine, and a $300 parole revocation restitution fine, the latter stayed.  The superior court struck five prison priors.

At the time of Gonzalez's 2014 conviction, his offense was a "wobbler," meaning prosecutors had discretion to charge the offense as a felony or a misdemeanor.  (Health & Saf. Code, former § 11377, subd. (a); see Pen. Code, § 17, subd. (a); *People v. Park* (2013) 56 Cal.4th 782, 790.)  With the enactment of Proposition 47 on November 4, 2014, all violations of Health and Safety Code section 11377 became misdemeanors, punishable "by imprisonment in a county jail for a period of not more than one year," unless the offender has certain prior convictions specified in Penal Code section 667, subdivision (e)(2)(C)(iv) and Penal Code section 290, subdivision (c).  (Health & Saf. Code, § 11377, subd. (a); Pen. Code, § 1170.18, subd. (i); *People v. Lynall* (2015) 233 Cal.App.4th 1102, 1105.)

Proposition 47 also added a resentencing procedure allowing offenders to petition for resentencing if they are "currently serving a sentence for a conviction, whether by trial or plea," for committing a felony and "would have been guilty of a misdemeanor under" the provisions added by Proposition 47.  (Pen. Code, § 1170.18, subd. (a).)  On November 19, 2014, Gonzalez filed such a petition, identifying his conviction as being for a violation of Health and Safety Code section 11377, subdivision (a) and stating,

3

"Due to Prop 47 making a felony possession of controlled substance a misdemeanor offense . . . I would like to be resentenced under that proposition."[2]

The People did not contend Gonzalez's conviction was ineligible for resentencing, but requested a hearing to determine whether the petition should be denied because "defendant poses an unreasonable risk of danger to public safety" within the meaning of section 1170.18, subdivisions (b) and (c). The superior court may deny an otherwise meritorious petition if "the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety" (§ 1170.18, subd. (b)),[3] which means there is "an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).)

On July 31, 2015, the superior court held a hearing on Gonzalez's dangerousness. To support his petition, Gonzalez presented summaries of interviews the public defender conducted with his family, as well as the testimony of family members attesting to his improved attitude and conduct. Among those appearing in his support was a woman with whom Gonzalez began a serious relationship before he was incarcerated. She has known Gonzalez since childhood, began dating him more than a year before his incarceration, and is now his fiancée. She reported Gonzalez has plans to enter drug rehabilitation and

---

[2] Gonzalez filed his petition using the form for a petition for habeas corpus, which the superior court properly treated as a petition for resentencing under section 1170.18, subdivision (a).

[3] Unlabeled statutory citations refer to the Penal Code.

4

seek employment after his incarceration. She also said Gonzalez "has never been violent towards her and [she] has never observed Gonzalez violent toward anyone else." She said "she is in love with Gonzalez and plans on getting married as soon as possible."

Gonzalez also presented prison records showing he had availed himself of several rehabilitation classes. Finally, he presented an expert evaluation of his disciplinary and rehabilitation record, which summarized the record as follows: "I found that Mr. Gonzalez has received no disciplinary chronos, and only one CDCR-115 Rules Violation Report since he began his current prison term." The expert stated, "It is my opinion that Mr. Gonzalez has a disciplinary record that is incredibly good. He has only one truly serious offense in prison, he was found not guilty, and it was dismissed. Based upon the complete lack of any disciplinary reports or warnings, I would assess that Mr. Gonzalez has displayed model behavior while serving his term in CDCR custody." The expert concluded "Gonzalez is no more likely to conduct offenses than the average citizen" and "the likelihood that Mr. Gonzalez would commit a 'super strike' if released to the community is very low."

For their counterargument, the People relied on three prior incidents, each of which resulted in a conviction for Gonzalez—one for spousal abuse (§ 273.5, subd. (a)), one for sexual intercourse with a minor (§ 261.5, subd. (c)), and one for second degree burglary (§ 459).[4] First, the People argued in their brief in the superior court that

_____

[4] None of these prior convictions requires registration under section 290, subdivision (c) and none is an offense specified under section 667, subdivision

*[footnote continued on next page]*

5

defendant pled guilty to spousal abuse (§ 273.5, subd. (a)) in 1996 and served two years in prison for the offense. The People submitted with their brief a probation report recounting—based on allegations in a police report—facts that indicate the incident was much more serious than the conviction makes clear.

"On July 12, 1996, officers of the San Jacinto Police Department responded to 469 Idyllwild Drive regarding a past battery. Upon their arrival, they contacted the victim. She explained her live-in boyfriend, the father of their three children had sexually assaulted her the night before. She identified him as the defendant, Arturo Gonzalez. [¶] The victim explained [Gonzalez] had been out drinking and came home about 2:30 am. An argument ensued regarding rent money and the defendant being with other women. She claimed the defendant then began to pull her hair and punch her in the head. The defendant then allegedly ripped off the victim's shirt and state[d] he was going to have sex with her. She claimed the defendant took her to their children's room and there had sex with her against her will, while the children were present.

"She claimed that during the rape, the defendant continued to punch her and pull her hair. He then allegedly stated he wanted to have 'kinky' sex with her. He told her to turn over because he wanted to do it 'doggie style.' She stated she tried to get away,

---

*[footnote continued from previous page]*
*[footnote continued from previous page]*
*[footnote continued from previous page]*
*[footnote continued from previous page]*
*[footnote continued from previous page]*
(e)(2)(C)(iv). Consequently, none disqualifies Gonzalez under section 1170.18, subdivision (i), and none establishes he has a history of committing super strike offenses.

screamed for help, but the defendant tied her hands together with a bed sheet and tried to anally penetrate her with his penis. When this was unsuccessful he stuck his finger in her anus to 'get it ready.' [¶] The victim also related the defendant would pull up on her hands while he was doing this and also force her to orally copulate him. She explained after the assault, the defendant went into the living room and passed out on the couch." The girlfriend also alleged the next morning Gonzalez again had sex with her against her will and in the presence of the children.

Gonzalez contradicted these accusations at the time. According to the probation report, he "denies raping his girlfriend. He claims they only had sex one time the day of the incident and that it was consensual. He admitted this sex took place in their children's room, but claimed the children had come out of their rooms while he and his girlfriend were arguing. He claimed that the children were then allowed into the master bedroom to watch television, while the arguing continued. [¶] He claims that while continuing the argument, the victim actually attacked him. She allegedly called him a liar because he would not admit his infidelity. He admits to grabbing her at this point in order to prevent injury and pinning her to the floor. He claims she cursed at him, 'so I spanked her twice on her foot.' [¶] The defendant claims that the victim is lying regarding his behavior because he told her he was leaving due to her insane jealousy and because she believes he was unfaithful to her."

Second, the People described the background facts related to a 1999 conviction for unlawful intercourse with a minor. (§ 261.5, subd. (c).) In their brief opposing

7

Gonzalez's petition, the People stated: "On June 1, 1999, the defendant had sexual intercourse with a child while married with children ages 8, 5, and 2. According to the arrest warrant declaration in the court file, the defendant was 26 years old at the time when he had sex with 13 year[-old] Jane Doe #2. The crime took place at a vacant clubhouse after a BBQ. Jane Doe #2 was a virgin at the time and became pregnant during the crime. She delivered a baby boy after carrying him for 35 weeks, who died two hours after birth due to pregnancy complications in [the] 13 year old girl. Defendant plead[ed] guilty to PC 261.5(c) Unlawful intercourse with a minor and served 16 months in prison." Though the People's brief refers to an arrest warrant declaration as support for the allegations, they do not contend the prosecutor submitted it to the superior court, and the record on appeal contains no such evidence.

Third, the People described the background facts related to a 2003 conviction for second degree burglary. (§ 459.) In their brief in the superior court, the People stated: "On June 10, 2003, the defendant was dating another woman, Jane Doe #3, and was engaged in consensual vaginal sex. According to Jane Doe #3, during sex, the defendant forcibly turned her over and sodomized her. She screamed and asked him to stop, but he continued to hold her down. A medical exam revealed bruises on her arm and leg and rectal injury. Defendant pled guilty to an added count of PC 459 2nd on April 27, 2004 to the low term of 16 months to state prison." Neither the People's brief in the superior court, their argument at the dangerousness hearing, nor their brief on appeal identifies any evidentiary basis for these allegations. The only arguable support for the allegations

8

in the record on appeal takes the form of a handwritten line on an Archive File Review form dated May 3, 2010, which reads: "6/25/03 BPT good cause for sodomy, [illegible] applied."

At the dangerousness hearing, the People relied on the same allegations and evidence to oppose resentencing Gonzalez. Defense counsel objected "to the Court considering the facts that the People have described that are considerably more egregious than the actual crimes for which Mr. Gonzalez was actually convicted" and also objected that arrest warrant declarations, police reports, and probation reports are unreliable hearsay evidence.

The superior court determined Gonzalez posed an unreasonable risk of danger to the public based on the three incidents. The superior court noted, "The first one I look at, I go to '96, pretty horrible, pled guilty to a felony domestic violence. But it's remote, and if that was the only one, I'd be going, okay, he's probably not going to commit a super strike. But then I look at No. 2 and I look at No. 3, and the pattern is pretty egregious." Based on the three incidents, the superior court found Gonzalez "is a danger of committing a sexually violent offense within the meaning of [section] 290. I don't think he's a gentleman that's going to go out and point a gun in somebody's face. He's never done that, and I don't think he would do that. But I do think that he is likely to be sexually violent, and I will find that based on that, his petition is denied." A minute order filed after the hearing stated, "Petition for resentencing pursuant to 18-PC 1170.18 is

9

denied. Court finds defendant is in danger of committing sexual offense pur [*sic*] 290 PC."

Gonzalez completed his prison term in November 2015, but remains in postrelease community supervision. June 6, 2017 is the earliest date for termination of his supervision, and the latest is May 29, 2018.[5]

## II

## DISCUSSION

Gonzalez contends the superior court abused its discretion by basing its dangerousness finding on insufficient evidence. We agree and therefore reverse.

Section 1170.18, subdivision (b), provides: "Upon receiving a petition under subdivision (a), the court shall determine whether the petitioner satisfies the criteria in subdivision (a). If the petitioner satisfies the criteria in subdivision (a), the petitioner's felony sentence shall be recalled and the petitioner resentenced to a misdemeanor pursuant to Sections 11350, 11357, or 11377 of the Health and Safety Code, or Section 459.5, 473, 476a, 490.2, 496, or 666 of the Penal Code, those sections have been amended or added by this act, unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety."

_____

[5] We are satisfied, despite Gonzalez's release from prison that this appeal is not moot based on the parties' representations that he remains on postrelease community supervision.

10

The superior court's discretion to determine dangerousness under the statute is broad. "In exercising its discretion, the court may consider all of the following: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes. [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated. [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)

The superior court's discretion is not, however, boundless. The statute specifies "unreasonable risk of danger to public safety" means an "unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667." (§ 1170.18, subd. (c).) The specified "super strike" crimes are numerous, but include "sexual penetration with another person who is under 14 years of age, and who is more than 10 years younger than he or she, as defined by section 289" (§ 667, subd. (e)(2)(C)(iv)), "[r]ape as defined in paragraph (2) or (6) of subdivision (a) of Section 261 or paragraph (1) or (4) of subdivision (a) of Section 262," and "[s]odomy as defined in subdivision (c) or (d) of Section 286" (§ 667.5, subd. (c); see also § 667, subds. (d)(1), (e)(2)(C)(iv) [defining as super strikes convictions for "[a]ny offense defined in subdivision (c) of Section 667.5 as a violent felony"]).

11

The facts considered by the trial court as a basis for a dangerousness finding must be established by the People by a preponderance of the evidence. (Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence"]; *People v. Esparza* (2015) 242 Cal.App.4th 726, 741 [People must prove dangerousness under Proposition 47 by a preponderance of the evidence]; see also *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1305 [People must prove dangerousness under Proposition 36 by a preponderance of the evidence].) We review the superior court's finding of an unreasonable risk of danger for an abuse of discretion. However, we apply the substantial evidence standard of review to the facts or evidence supporting the court's finding. Therefore, a factor relied on by the court that is not supported by a preponderance of the evidence cannot form the basis of the court's determination. (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998 [holding a trial court abuses its discretion when its factual findings are not supported in the record].)

In this case, we conclude the People did not meet their burden of proving the prior offenses support a dangerousness finding and therefore must conclude the superior court's dangerousness finding was not supported by substantial evidence.[6] Though the People's description of the facts they allege formed the background of Gonzalez's 1999

---

[6] The People contend Gonzalez forfeited the claim of insufficient evidence by objecting only on the ground that the supporting evidence constituted hearsay. In fact, Gonzalez's objection was that the People's hearsay support—some of it in the form of unsworn attorney representations—was not sufficiently reliable to be considered at a sentencing proceeding. We are satisfied the objection preserved this issue for appeal.

and 2003 convictions are egregious, there is no record evidence to support finding them to be true. Instead, the People merely presented descriptions of the events in briefing and at oral argument. Attorney statements and arguments in briefs and at a hearing are not evidence. (*Homes on Wheels v. City of Santa Barbara* (2004) 119 Cal.App.4th 1173, 1179 ["City's evidence was insufficient" where "[t]he City presented no testimony" and "the City Attorney's oral argument was not evidence"].) The People's reference to an arrest warrant declaration regarding the second incident and its inclusion of an Archive File Review form stating "6/25/03 BPT good cause for sodomy, [illegible] applied" cannot fill the evidentiary gap. Accordingly, we must conclude the People's representations about the two incidents did not provide substantial support for the court's finding of dangerousness.

The People's allegations concerning the first (1996) incident did have evidentiary support in the form of the probation report. As in traditional sentencing proceedings, at a dangerousness hearing under Proposition 47, superior courts may "consider a broad range of information, including responsible unsworn and out-of-court statements concerning the defendant, provided there is a substantial basis for believing the information is reliable." (Couzens & Bigelow, Proposition 47: "The Safe Neighborhoods and Schools Act" (May 2016) p. 54, <http://www.courts.ca.gov/documents/Prop-47-Information.pdf> [as of May 27, 2016], citing *People v. Arbuckle* (1978) 22 Cal.3d 749, 754; *People v. Lamb* (1999) 76 Cal.App.4th 664, 683.) However, even assuming the superior court had a substantial basis for crediting the hearsay allegations in the probation report and discounting

13

Gonzalez's own contrary statements, that incident was too remote and too isolated to provide adequate support for a finding that, if released, Gonzalez would pose an unreasonable risk of danger of committing another super strike offense 20 years later. The superior court recognized that problem, and indicated it would not find Gonzalez dangerous on the basis of the 1996 incident alone. We agree with the superior court on that point, and conclude the probation report on its own did not provide substantial evidence for the court's finding of dangerousness.

Gonzalez's record since the 2003 burglary conviction underscores the problem with relying on the 1996 incident. His current conviction is for drug possession, not a violent offense. Neither evidence nor attorney representation indicates Gonzalez has committed violent acts (sexual or otherwise) in the last 13 years. Meanwhile, his conduct during his current incarceration has been exemplary. He has availed himself of several classes to aid in his reintegration to society and the workplace and "has displayed model behavior while serving his term." Based on these facts, an expert on correctional issues concluded "Gonzalez is no more likely to conduct offenses than the average citizen" and "the likelihood that Mr. Gonzalez would commit a 'super strike' if released to the community is very low." Perhaps more important, before starting his prison term, Gonzalez began a serious relationship with a woman who has known him since childhood and who is now his fiancée. She gave a statement in support of Gonzalez to the public defender and also testified at the dangerousness hearing in his support. She reported Gonzalez "has never been violent towards her and has never observed Gonzalez violent

toward anyone else," and said "she is in love with Gonzalez and plans on getting married as soon as possible."

Accordingly, we reverse the superior court's dangerousness determination and remand for further proceedings.  On remand, the superior court may grant Gonzalez's petition or set another hearing and allow the parties to supplement the record.

## III

## DISPOSITION

We reverse the order denying Gonzalez's petition for resentencing and remand for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.

15