Filed 6/13/16  P. v. Shirley CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>GAYLON RAY SHIRLEY,<br><br>　　Defendant and Appellant. | B262383<br><br>(Los Angeles County<br>Super. Ct. No. TA047762) |

　　　APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

　　　Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

　　　Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson and Noah P. Hill, Deputy Attorneys General, for Plaintiff and Respondent.

———————————

## INTRODUCTION

Defendant Gaylon Ray Shirley appeals from an order denying his petition to be resentenced under the Three Strikes Reform Act of 2012 (Proposition 36; Pen. Code, § 1170.126[1]). The trial court concluded that defendant's "extensive criminal record, lack of significant positive rehabilitative programming, and weak re-entry plans support a finding that [defendant], at this time, poses an unreasonable risk of danger to public safety if resentenced." Defendant contends the trial court abused its discretion in so finding. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1997, defendant was convicted of possession of cocaine for sale with a prior conviction for the same crime (Health & Saf. Code, §§ 11351, 11370.2). The trial court found that he had three prior robbery convictions (§ 211), which were serious or violent felonies (§§ 667, subds. (b)-(i), 1170.12). The court sentenced defendant under the three strikes law to 28 years to life in state prison.

On March 1, 2013, defendant filed a petition for resentencing under Proposition 36. An evidentiary hearing on the petition was held on January 12, 2015. The sole issue at the hearing was suitability—i.e., whether defendant would pose an unreasonable risk of danger to public safety if resentenced. Both parties submitted exhibits into evidence without calling witnesses. After hearing argument from counsel, the trial court took the matter under submission and issued its ruling denying the petition on February 11, 2015. The trial court's ruling, contained in an extensive memorandum of decision that thoroughly discusses the evidence and the applicable legal standard, is summarized below.

At the time of the hearing, defendant was incarcerated at Folsom State Prison and had served 16 years of his sentence. He was 61 years old and had type 2 diabetes, hepatitis C, and hypertension. The trial court considered the fact that a prisoner's

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

2

"advanced age may constitute a mitigating factor when assessing the potential risk of future violence," but noted that defendant was almost "44 years old at the time of the commitment offense." The court concluded that "[w]hile [defendant's] age and health may weigh in favor of finding [him] suitable, these factors are outweighed by the danger he poses to public safety" as shown by other factors.

The trial court evaluated defendant's extensive criminal history dating back to his youth and continuing until his most recent imprisonment at age 43—a history interrupted only by incarceration. Defendant's first encounter with the law occurred at the age of 13, when he severely beat another minor, resulting in a sustained petition for assault with a deadly weapon. At age 14, he abducted an 11-year-old boy and forced him to assist in robbing a store, resulting in a sustained petition for kidnapping for ransom. Defendant was discharged from parole, after two violations for robbery, at the age of 18.

One month later, defendant began his career of crime as an adult, starting with vandalism, burglary, and the unlawful taking of a vehicle in the same year. He was released on parole at age 22 and committed the crime of grand theft person while on parole. Less than a year later, he was convicted of possession of a controlled substance for sale and sentenced to prison. At age 27, days after being discharged from parole, defendant was convicted of his first strike offense by robbing a market with a confederate who used a gun to obtain money from the cashier. While released on bail, defendant committed his second strike offense for robbing a gas station with a confederate who used a gun to obtain money from the cashier. During the robbery, the confederate used his gun to strike a customer on the side of his head. At age 31, shortly after being released from prison for the two robberies, defendant committed his third strike, resorting to his familiar pattern of armed robbery, except this time he had two confederates, one of whom had a gun. The three men entered a retail store and stole money and stereo equipment while one of defendant's confederates wielded a gun. Defendant was sentenced to 16 years in prison and returned to criminal activity soon after being released. At the age of 43, defendant was convicted of possessing cocaine for sale (the commitment offense).

3

The trial court next considered defendant's disciplinary history and rehabilitation efforts while in prison. His disciplinary history as a prisoner with the California Department of Corrections and Rehabilitation (CDCR) during his current incarceration consisted of three serious rule violations and one administrative rule violation. The serious rule violations were for mutual combat in 2000, obstructing a peace officer in 2001, and conduct that could lead to violence in 2005. The administrative rule violation was for "horseplay" in 2000. At the time of the hearing, defendant's CDCR classification score was 23.[2] As for his participation in rehabilitative programs, defendant submitted evidence that: he completed a four-month self-examination program in 2010; he finished a nonviolent conflict resolution course in 2012; he enrolled in Alcoholics Anonymous (AA) and attended AA classes in 2013; and he enrolled in Narcotics Anonymous (NA), completed three anger management classes, and attended health presentations in 2014. He also provided the trial court with unauthenticated documents indicating that he had participated in several other programs. In addition, he began a work assignment in 2012.

Relying on *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1306, footnote 29 [stating that a dangerousness finding under Proposition 36 "is somewhat akin to a decision denying an inmate parole"]), the trial court then applied parole criteria in considering defendant's suitability for relief. The court noted that the parole "cases draw a distinction between immutable or static factors, such as the circumstance of the life crime and the inmate's prior criminal record, and mutable or dynamic factors, such as insight into the causes of criminality, remorse, behavior in prison, rehabilitative programming, and current age." Citing *In re Lawrence* (2008) 44

---

[2] The CDCR performs an initial classification followed by periodic reclassifications of each inmate. The classification process considers numerous factors, including behavior. (Cal. Code Regs., tit. 15, § 3375, subd. (b).) "A lower placement score indicates lesser security control needs and a higher placement score indicates greater security control needs." (*Id*., subd. (d).) The lowest classification score an inmate serving a life sentence can receive is 19. Defendant received an initial classification score of 71.

4

Cal.4th 1181, 1219-1220, the court further noted that "[t]he immutable factors tend, over time and in the face of substantial rehabilitative programming, to be decreasingly predictive of *current* dangerousness."

Applying these principles, the trial court concluded that the defendant's release from custody would present an unreasonable risk to public safety. The court observed that defendant "has not spent *a single year* of his adult life outside of jail or prison or under the supervision of probation or parole." The court found this criminal history relevant "in light of his current lack of significant positive rehabilitative programming and transition plan." It was "significant to the [c]ourt that [defendant] completed no rehabilitative programming or vocational training the first 13 years of his incarceration," and that his "relatively short period of participation in rehabilitative programming has been sporadic." His "overall lack of significant rehabilitative programming and vocational training indicates a failure on his part to address the factors contributing to his extensive criminal history of theft crimes . . . ." The court also noted that defendant "claimed that drug abuse was the motivating factor in the commitment of his strike priors," yet he "made no effort to address his substance abuse until after the . . . filing of his petition for resentencing, calling into question his motivation and sincerity."

The trial court also expressed concern about defendant's proposed post-release plans. At one point, defendant stated that he would live with his sister and would participate in a program offered by the Amity Foundation that would offer him various services to facilitate his transition. At another point, he stated that he would live with his wife and would attend AA/NA meetings and a drug treatment program, and that he would seek employment based on skills he acquired in prison working in the kitchen and on a yard crew. Neither plan explained how defendant would support himself, which the court found "particularly concerning . . . in light of [his] lack of vocational training throughout the majority of his incarceration and his extensive criminal history consisting largely of theft crimes."

After weighing the relevant factors, the trial court concluded that defendant should not be resentenced because he would pose an unreasonable risk of danger to public safety

5

if released. The court did find factors favoring defendant's release, including his age, medical issues, and disciplinary record in prison. However, the court found that these factors were outweighed by other considerations, including his "extensive criminal record, lack of significant positive rehabilitative programming, and weak re-entry plans."

## DISCUSSION

Defendant contends that the trial court erred in applying the wrong suitability standard and otherwise abused its discretion in finding him to be unsuitable for release. Neither contention has merit.

### A. THE SUITABILITY STANDARD

Defendant was sentenced to an indeterminate life term under the three strikes law for a felony that undisputedly made him eligible under Proposition 36 to petition the court for resentencing as a second strike offender. (§ 1170.126.) Resentencing, however, does not automatically follow from eligibility. Relief under Proposition 36 will be denied if "the court, in its discretion, determines that resentencing the [inmate] would pose an unreasonable risk of danger to public safety." (*Id.*, subd. (f).) In exercising its discretion, "the court may consider: [¶] (1) The [inmate's] criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The [inmate's] disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id.*, subd. (g).)

Proposition 36 does not define the phrase "unreasonable risk of danger to public safety," but instead vests the trial court with discretion, guided by specified considerations, to make this determination. Subsequent to the enactment of Proposition 36, the voters passed Proposition 47. Under Proposition 47, the voters determined that certain low-level drug and theft crimes previously classified as "wobbler" offenses (i.e., those that could be charged as misdemeanors or felonies in the prosecution's discretion) would be reclassified as misdemeanor offenses only. (*People v. Rivera* (2015) 233 Cal.App.4th 1085, 1091.) An eligible defendant serving a sentence on a felony

6

conviction subject to reduction may be resentenced under Proposition 47, unless the trial court finds that he or she "would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) Proposition 47 does define that phrase: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."[3] (*Id*., subd. (c).)

In his opening brief, defendant argues that the trial court should have applied the Proposition 47 definition in deciding his suitability for relief under Proposition 36. His supporting argument is largely limited to a single paragraph: "Under [Proposition 47], the definition of dangerousness is to be used throughout this 'code.' A reasonable inference is the Penal Code. In this case, the trial court repeatedly asked counsel if [defendant] was dangerous pursuant to [Proposition] 36 standards and not [Proposition] 47, indicating the court had a different standard when no difference should have applied."[4] The People responded to this argument at length in its response brief. In his reply brief, defendant criticizes the People for addressing this question "as if this were a law review article" and suggests that this is not a genuine issue in the case, stating that "[i]t is not until page 26 that [the People] started to address the relevant facts and issues that are presented in this appeal."

Not only does defendant fail to provide any meaningful argument or analysis of the issue, he also neglects to apply a standard different from the one used by the trial

---

[3]    The violent felonies identified in this section are commonly known as "'super strikes'" (*People v. Bush* (2016) 245 Cal.App.4th 992, 1003) because they are among the most serious of violent crimes, including homicide offenses, violent sexual offenses, assaults on a peace officer or firefighter with a machine gun, possessing a weapon of mass destruction, and any serious or violent offense punishable by life in prison or death.

[4]    The issue whether the Proposition 47 definition applies to a Proposition 36 suitability determination is pending before the California Supreme Court. (See, e.g., *People v. Davis* (2015) 234 Cal.App.4th 1001, review granted June 10, 2015, S225603; *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted Feb. 18, 2015, S223825.)

7

court. In fact, defendant appears to adopt the standard applicable in parole cases, citing to the case upon which the trial court relied in determining suitability: "A more accurate analogy to define an unreasonable risk to public safety, comes through the parole cases. The definitions, presumptions, and burdens, are the same in parole cases as they are in Proposition 36 cases. In *In re Lawrence* . . . , the Supreme Court held that . . . '[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public.'" Defendant then continues to rely on *Lawrence* to evaluate his suitability for release under Proposition 36.

In these circumstances, we find that defendant has forfeited his claim that the trial court applied an incorrect legal standard. (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 [applying the forfeiture rule].) "It is the responsibility of the appellant . . . to support claims of error with meaningful argument and citation to authority. [Citations.] When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. [Citations.] . . . We are not required to examine undeveloped claims or to supply arguments for the litigants. [Citations.]" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.) A forfeiture finding is particularly apt where, as here, defendant does not develop the legal argument and proceeds to apply an analysis seemingly inconsistent with his conclusorily stated contention.

## B. THE SUITABILITY ANALYSIS

Defendant next challenges the trial court's finding that resentencing him would pose an unreasonable risk of danger to public safety. We review that finding for an abuse of discretion. (See *People v. Williams* (2013) 58 Cal.4th 197, 270-271 [abuse of discretion standard applies when statute vests discretionary authority in trial court].) To demonstrate abuse, a defendant is required to show that the trial court's ruling so exceeded the bounds of reason (*People v. Johnson* (2015) 61 Cal.4th 734, 750) that it can be said it acted in an "'arbitrary, capricious or patently absurd manner'" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124).

8

Defendant has not satisfied his burden. In reaching its decision, the trial court considered the relevant factors, including defendant's criminal history, disciplinary record, rehabilitation efforts while incarcerated, and post-release plans. (§ 1170.126, subd. (g); *People v. Esparza* (2015) 242 Cal.App.4th 726, 735; see *In re Lawrence*, *supra*, 44 Cal.4th at p. 1220, fn. 19 [suitability factors include, among others, "whether the inmate exhibits signs of remorse, has made realistic plans for release or has developed marketable skills that can be put to use upon release, and whether the inmate's institutional activities reflect an enhanced ability to function within the law upon release"]; *In re Cerny* (2009) 178 Cal.App.4th 1303, 1306 ["concern about [the defendant's] uncertain plans for parole was justified" given his "extensive history of drug abuse"].) In its 12-page memorandum of decision, the court carefully evaluated all the information before it, weighing both the aggravating and mitigating factors. On balance, the court found the aggravating factors outweighed the mitigating ones. In the court's view, defendant had lived a life of crime until he was almost 44 years old and had made no genuine effort to rehabilitate himself or obtain vocational skills in the ensuing years while in custody. Given this substantial criminal history and insubstantial rehabilitative and employment history, the court concluded that defendant posed an unreasonable risk of danger to public safety, especially in light of his weak post-release plans.

In challenging the trial court's conclusion, defendant acknowledges but fails to apply the proper standard of review. After asserting that "the reasons for denying him resentencing did not rise to the level of making him an unreasonable risk to public safety," defendant proceeds to dispute how the trial court weighed the evidence. He argues that he had a "good incarceration history," attended AA/NA classes and remained substance free, obtained a high school diploma, participated in various programs, was accepted into the Amity Foundation program to facilitate his reintegration into society, and had family support; he further argues that his lengthy criminal history was an

9

immutable factor that over time was less predictive of his current dangerousness.[5] As previously discussed, the trial court properly considered and rationally weighed all these facts and arguments. Defendant is essentially asking us to reweigh this evidence in his favor on appeal. Fidelity to the standard of review, however, requires us to decline this entreaty. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 ["[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance"].)[6]

In short, we cannot say that the trial court acted arbitrarily, capriciously, and ultimately outside the bounds of reason in denying defendant's petition to be resentenced. On the contrary, the court considered the relevant evidence, weighed the applicable factors, and reached a reasoned conclusion. The fact that the trial court could have reached a contrary conclusion on the same record does not render its decision an abuse of

---

[5]     Defendant also attempts to minimize his history of violence, repeatedly asserting that he has never been violent with anyone. This overlooks both his actions as a juvenile in severely beating one minor and forcibly abducting another and his actions as an adult in participating in three armed robberies. Contrary to his suggestion, these robberies were no less violent because he was not the one holding the gun.

[6]     Defendant disputes two other aspects of the trial court's ruling. First, he contends that "[t]he court's prediction that [he] may not continue his sobriety when released to a transitional living program . . . was simply speculation . . . ." The suitability inquiry, however, is predictive in nature; and the trial court relied on facts rather than speculation in expressing concerns about defendant's ability to maintain sobriety if released—i.e., a long history of substance abuse and a short (and suspiciously timed) history of treatment. Second, defendant claims that he participated in rehabilitative programs prior to the passage of Proposition 36 and complains that the trial court declined to give sufficient weight to unauthenticated documents showing the full extent of his participation. But the trial court acknowledged his prior participation and acted within its authority as a fact finder in being skeptical of records whose origin had not been adequately established. (*People v. Ramos* (2004) 121 Cal.App.4th 1194, 1207 ["the weight accorded the evidence are matters within the province of the trier of fact"].)

10

discretion.  (*People v. Johnson*, *supra*, 61 Cal.4th at p. 750; *People v. Rodrigues*, *supra*, 8 Cal.4th at p. 1124; *People v. Myers*, *supra*, 69 Cal.App.4th at p. 310.)

## DISPOSITION

The order is affirmed.


BLUMENFELD, J.[*]


We concur:


PERLUSS, P. J.


ZELON, J.

---

[*]     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.