Filed 8/27/20  P. v. Venson CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B299412 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA140055-01) |
| v. | |
| CLIFFORD VENSON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Deputy Attorney General, Noah P. Hill and Ryan M. Smith, Deputy Attorney Generals, for Plaintiff and Respondent.

\* \* \* \* \* \*

Clifford Venson (defendant) argues that the trial court erred in denying his petition for resentencing under Proposition 36, the 2012 voter initiative that modified our state's Three Strikes Law. (Pen. Code, §§ 1170.12, subds. (a)-(d), 667, subds. (b)-(j).)[1] The court denied defendant relief after ruling that resentencing him would "pose[] an unreasonable risk of danger to public safety." This ruling was well within the court's discretion. Accordingly, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts

#### A.     *The charged crimes*

In October 1996, defendant jumped into the driver's seat of a tow truck while its operator was busy helping a motorist jump start a car, and drove away at a "high rate of speed." When law enforcement later spotted the stolen tow truck and signaled for defendant to pull over, he did precisely the opposite: He fled, driving on the wrong side of the street, speeding 50 miles per hour in a 25 mile-per-hour zone, and blowing through a red light. The chase ended when defendant slammed the tow truck into a parked car, fled on foot, and was found cowering in a trash can. When arrested, defendant explained that he "took the truck because [he] needed to get some rock [cocaine]."

A jury ultimately convicted defendant of (1) unlawful driving of a vehicle, as a felony (Veh. Code, § 10851, subd. (a)); and (2) evading an officer with willful disregard for the safety of others (*id.*, § 2800.2, subd. (a)). The jury also found that defendant had three prior convictions that constituted "strikes" under our Three Strikes Law—namely, a 1988 conviction for

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

robbery (§ 211), a 1988 conviction for assault with a firearm
(§ 245, subd. (a)(2)), and a 1992 conviction for robbery (§ 211).
The trial court imposed a "third strike" sentence of 25 years to
life in prison.

### B. *Defendant's criminal history prior to the charged crimes*

Between June 1987 and the charged crimes, defendant
committed a series of crimes for which he was convicted. During
this time, defendant was using both marijuana and cocaine, and
later explained that he "committed crimes to support [his] drug
habit."

In June 1987, defendant was convicted of the misdemeanor
of taking a motor vehicle (Veh. Code, § 10851, subd. (a)), and was
sentenced to one year of summary probation with a 30-day jail
sentence.

While on probation, defendant in August 1987 unlawfully
drove another vehicle. He was convicted of that misdemeanor
(Veh. Code, § 10851, subd. (a)), and was sentenced to two years of
summary probation with a 90-day jail sentence.

While on probation, defendant committed two sets of
crimes. In April 1988, he walked up to a person pumping gas at a
gas station, pointed a gun at his stomach and demanded his car
keys. Defendant then ordered the person in the car's front
passenger seat to get out of the car; when that person hesitated,
defendant told the passenger he was "not fooling around" and
fired a shot into the gas station's overhead canopy. In June 1988,
defendant committed a second degree burglary (§ 459) and also
unlawfully drove a vehicle (Veh. Code, § 10851, subd. (a)). For
the April 1988 crimes, defendant was convicted of robbery (§ 211)
and assault with a firearm (§ 245, subd. (a)(2)), both of which are
"strikes," and was sentenced to state prison for seven years. For

3

the June 1988 crimes, defendant was convicted of second degree burglary and unlawful driving, and sentenced to state prison for two years, to run concurrently with the seven-year sentence.

Less than three months after being paroled, defendant in April 1992 approached a person in a parking lot who was leaning into his vehicle, grabbed his hair, and yanked him out of the vehicle. Defendant pointed a large gun at the person and asked for the car keys. When the person hesitated, defendant chambered a round in the gun. The person then handed over the keys, and defendant drove off. Defendant was convicted of robbery. (§ 211) The robbery conviction was a "strike." Defendant was sentenced to state prison for five years.

Less than ten months after being paroled, defendant in October 1995 took the change that a gas station attendant was handing back to a customer, saying "give me that shit." Defendant was convicted of petty theft with a prior (§ 666), and sent back to state prison as a parole violation.

Less than ten days after being paroled again, defendant committed the charged crimes.

C.   ***Defendant's conduct while in prison on the charged crimes***

Between defendant's arrest on the charged crimes (on October 20, 1996) and 2018, defendant incurred 39 serious rules violations in prison.

Several involved acts of violence. Defendant engaged in mutual combat with other prisoners on many occasions—in June 1999, October 2000, September 2002, and February 2017. Defendant was also violent with correctional officers. In October 2006, he told a correctional officer "you ain't tough mother fucker" and "You ain't nothing but a bitch," refused to comply with the officer's commands, and was ultimately restrained by

4

multiple officers. In December 2006, after a fight with another inmate, defendant disobeyed orders to drop to the ground, which prompted officers to use pepper spray and force to take him to the ground. And in May 2018, defendant while being transferred to a different cell told a correctional officer, "Fuck you, I ain't moving motherfucker!" before punching the officer in the face.

Several involved threats of violence. In October 2005, defendant gave a note to a female correctional officer saying, "I get released, I'm stalking you." In July 2010, defendant told prison officials that he was "going to assault" "any inmate you put in my cell."

Several involved sexual conduct. Defendant repeatedly masturbated in front of, or exposed his genitals to, female correctional officers or prison staff—in April 2002, May 2004, September 2004, February 2005, April 2005, June 2005 and November 2016. He made comments or sent notes expressing sexual desire for female correctional officers—in June 1998, October 2005, February 2006, and September 2006. He called a female correctional officer on a contraband cell phone in April 2018.

Several involved alcohol and drugs. In February 2001 and March 2002, defendant possessed inmate-manufactured alcohol in his cell. In June 2010, defendant attempted to smuggle into the prison several balloons containing more than 7 grams of marijuana and laced with cocaine that his mother had brought him. And in September 1999, defendant refused to provide a urine sample.

The remainder chiefly involved blatant refusals to follow orders. On repeated occasions, defendant refused orders to be housed with a cellmate—in May 2005, April 2006, April 2007,

June 2007, February 2011, and September 2018.  He went so far as to assault another inmate placed in his cell in December 2006.  He also refused to follow other orders of correctional officers or prison staff in June 2001, May 2004, June 2006, December 2009, September 2013, and December 2013.  In April 2009, defendant stole food and in July 1998 he and others flooded their cells by clogging the toilets and sinks.

By July 2016, defendant's "classification score"—which is a measure of an inmate's "security risk" (*In re Stoneroad* (2013) 215 Cal.App.4th 596, 605—was 134.[2]  Because the minimum score for life prisoners is 19, defendant's score reflects an "elevated" security risk.

## II.    Procedural Background

In March 2013, defendant filed a petition for resentencing under Proposition 36.  The trial court issued an order to show cause, entertained extensive briefing from the parties, and held an evidentiary hearing.

In June 2019, the trial court issued a 15-page order denying defendant's petition.  Because defendant was indisputably *eligible* for relief under Proposition 36, the court focused its analysis on whether defendant was *suitable* for relief—that is, whether he would pose an unreasonable risk of danger if resentenced.

The court noted that defendant's criminal history, because it was "immutable," was relevant only to the extent it "support[ed] [a] . . . conclusion" that defendant "continue[d] to pose an unreasonable risk to public safety," and found here that it did:  It was "lengthy," and demonstrated that neither prior

---

[2]      It was as high as 142 in July 2013.

6

punishment nor being under supervision (through parole or probation) had "deter[red] [defendant] from reoffending." Indeed, the court remarked, "[s]ince the late 1980s, [defendant] ha[d] been unable to remain in the free community for more than . . . ten months without reoffending." Although defendant's prior convictions were "remote in time," the court reasoned, those convictions "demonstrate[d] a pattern of criminality that ha[d] not changed since 1987" and that "[t]his pattern shows a clear risk of current dangerousness upon release."

The court then catalogued the 39 serious rules violations defendant incurred while in prison. Although "most . . . were for nonviolent offenses[] and many [were] very old," the court explained, "the sheer number of offenses is indicative of [defendant's] inability to follow the law, even in a controlled setting." Of particular note was defendant's 2018 violation for battery upon a correctional officer, which the court found to be "probative of [a] current risk of dangerousness." This security risk was reflected by defendant's "elevated" classification score of 134. The court found that defendant had "not participated in a meaningful amount of rehabilitative programming" over his 22-year stint in prison. Although defendant had "made considerable progress toward his college degree," he had made "little to no" effort to address the "'rock' cocaine habit that drove [him] to commit the current offense[s]." Further, defendant's plan to "live with his mother upon release" would leave defendant in need of money, a need that his history indicated would be met by theft.

The court lastly noted that defendant's age of 52, while often a factor in showing less risk of danger, did not do so in this case given his penchant for using weapons and his recent battery on a correctional officer. "On balance," the court concluded,

7

defendant's "criminal history combined with disciplinary history remain predictive of current dangerousness."

Defendant filed this timely appeal.

## DISCUSSION

In 2012, the voters enacted Proposition 36 and thereby altered our state's Three Strikes Law. As pertinent here, Proposition 36 created a mechanism by which defendants previously sentenced to a third-strike sentence (of 25 years to life in prison) could petition a court to resentence them to a second-strike sentence (of double the statutorily prescribed prison sentence for the "strike" offense) if the offense(s) triggering the third-strike sentence were not "serious" or "violent" felonies. (§§ 1170.126, subds. (a) & (b), 1170.12, subd. (c)(2)(C), 667, subd. (e)(2)(C).) In litigating a Proposition 36 petition, the defendant bears the initial burden of making a prima facie showing that he is eligible for relief; the People bear the burden of establishing the defendant's ineligibility for relief, if any, beyond a reasonable doubt; and, if the defendant is found to be eligible, the trial court then makes the "discretionary decision" whether "resentencing the [defendant] would pose an unreasonable risk of danger to public safety" based on facts that the People must prove by a preponderance of the evidence. (*People v. Frierson* (2017) 4 Cal.5th 225, 234 (*Frierson*); *People v. Buford* (2016) 4 Cal.App.5th 886, 893, 898-899, 901 (*Buford*); see § 1170.126, subd. (f).) Because it is undisputed that defendant satisfied his initial burden and the People concede that defendant is eligible for Proposition 36 relief (because his convictions for unlawful driving of a vehicle and recklessly evading an officer are neither "serious"

8

nor "violent" felonies),[3] the propriety of Proposition 36 relief in this case turns solely on whether the trial court erred in concluding that resentencing defendant would pose an unreasonable risk of danger to public safety. Because trial courts enjoy "broad[] discretion" in making this determination (*Frierson*, at p. 240), our review is confined to examining whether that discretion was abused and, as a subsidiary matter, whether any facts the trial court relied upon were supported by substantial evidence in the record. (*Buford*, at p. 895; see generally *People v. Macabeo* (2016) 1 Cal.5th 1206, 1212 (*Macabeo*).)

### A. *Analysis*

"In exercising its discretion" to determine whether "resentencing the [defendant] would pose an unreasonable risk of danger to public safety," Proposition 36 provides that a trial court "may consider" (1) the defendant's "criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes"; (2) the defendant's "disciplinary record and record of rehabilitation while incarcerated"; and (3) "[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

Under this governing law, the trial court did not abuse its discretion in concluding that resentencing defendant would pose

---

[3] Defendant's unlawful driving conviction is subject to reduction to a misdemeanor under Proposition 47 (§ 1170.18), but defendant has not yet sought that relief and that possibility does not alter the Proposition 36 analysis given defendant's concurrent conviction for reckless evasion.

an unreasonable risk of danger to public safety. The court considered each of the statutorily enumerated factors, and did so in order to determine what light they shed on whether defendant "*currently* pose[d] an unreasonable risk of danger to public safety." (Italics added.) The court examined defendant's extensive but temporally remote history of criminal convictions, and concluded that it contributed to a finding of a *current*, unreasonable risk of danger because it demonstrated a pattern of violence-laden property crimes driven by drug addiction that, critically, were not deterred either by prior punishments or by being under parole or probationary supervision. Such an "unrelenting record of recidivism, even while on parole or probation from previous felony convictions" marks defendant as "the kind of revolving-door career criminal for whom the Three Strikes law was devised" (*People v. Gaston* (1999) 74 Cal.App.4th 310, 320 (*Gaston*)), and hence the type of criminal who poses the greatest risk of danger to public safety. And although defendant's incarceration for the last 22 years precluded the existence of any *recent* evidence of his tendency to commit more crimes *outside* of prison, his disciplinary history while in prison reflected defendant's continued inability "to comply with the rules"—here, "of the institution"—that constitutes further evidence that defendant "will be unable to follow society's laws" "when released" (*In re Reed* (2009) 171 Cal.App.4th 1071, 1085), and hence will pose an unreasonable risk of danger to public safety if released. Further, the sum total of defendant's efforts to address the "root cause" of his criminal behavior—his addiction to drugs and his willingness to commit crime to sustain that addiction—was his attendance at one alcoholic's anonymous meeting and four narcotics anonymous meetings over the course

10

of 22 years.  Defendant's failure to address this "'root cause'" only heightens the risk of recidivism, and hence the danger he poses to public safety if released.  (*Gaston*, at p. 322 [so noting].)  Because the trial court considered all of the relevant factors, and did so in a reasonable way, it acted well within its discretion in concluding that resentencing defendant would pose an unreasonable danger to public safety.

**B.** ***Defendant's arguments***

Defendant makes what boils down to three categories of challenges to the trial court's analysis and conclusion.

1. *The applicable standard*

Defendant argues that the trial court applied the wrong legal standard in examining whether resentencing him would pose an unreasonable risk of danger to public safety.  Specifically, he argues that Proposition 36 altered the "spirit" of the Three Strikes Law, thereby (1) erecting a "presumption" that all defendants eligible for Proposition 36 relief are entitled to that relief except in "the most extraordinary cases," and (2) creating an entitlement to Proposition 36 relief protected by due process that precludes a trial court from arbitrarily choosing which portions of the record to examine.  At bottom, defendant urges that Proposition 36 puts a thumb on a petitioning defendant's side of the scale when it comes to granting relief.

Defendant is wrong.  Every court to consider the issue has concluded that Proposition 36 does *not* erect a "presumption" in favor of relief that may be overcome only in the most extraordinary of cases.  (*Buford*, *supra*, 4 Cal.App.5th at pp. 901-903 [so holding]; *People v. Superior Court (Kaulick)* (2013) 215 Cal.App.4th 1279, 1302-1303 [same].)  And our Supreme Court has explicitly held that Proposition 36 "does not create an

11

entitlement to resentencing" (*People v. Perez* (2018) 4 Cal.5th 1055, 1064), which tends to undermine defendant's entitlement-based theory for due process protection.  In any event, we fail to see what weight a due process-based protection would add given that Proposition 36 itself requires a court to consider "any" "relevant" "evidence" while examining risk (§ 1170.126, subd. (g)(3)), that courts have already construed Proposition 36 to require a consideration of *the totality* of the circumstances (*Buford,* at p. 903; *People v. Esparza* (2015) 242 Cal.App.4th 726, 746), and that the discretion that Proposition 36 confers upon a trial court would be abused if the court acted arbitrarily in denying relief (e.g., *People v. Fudge* (1994) 7 Cal.4th 1075, 1105).

  2. *Objections to specific portions of trial court's analysis*

   a. Criminal history

Defendant asserts that his criminal history is "immutable." As a result, he (1) suggests it cannot be considered *at all* because he has already "paid his debt" to society, (2) asserts that it is relevant only if there is a "nexus" to the current risk he poses to public safety, and the trial court articulated no such nexus.  We reject defendant's suggestion that a trial court may not consider a defendant's criminal history for the simple reason that Proposition 36 expressly provides that it "may."  (§ 1170.126, subd. (g)(1)).)  We also reject defendant's assertion that the trial court abused its discretion in analyzing his criminal history.  The trial court acknowledged the age of defendant's prior convictions as well as the fact that they are relevant only to the extent they "support [a] conclusion" that he "continues to pose an unreasonable risk to public safety"—that is, to the extent there is a nexus.  Contrary to what defendant asserts, the trial court went on to articulate that nexus—chiefly, that defendant's criminal

12

history reflects a pattern of committing crimes that is undeterred by punishment or by supervision, and that the persistence of this pattern creates a risk that defendant will fall right back into it following release and thus pose an unreasonable risk of danger to public safety. This risk was heightened, the trial court further explained, by defendant's continued and persistent pattern of violating the rules while in prison. The trial court was not obligated to explain any further.

                    b.      Prison disciplinary history, rehabilitative programming, and post-release plans

Defendant objects to two aspects of the trial court's analysis of his disciplinary history in prison. First, he contends that the trial court was wrong to rely on his May 2018 rule violation for committing battery on a correctional officer because (1) any reliance is forbidden because that violation was on appeal and thus not definitively resolved, and (2) the evidence supporting that violation has a "dubious . . . foundation." We reject these contentions. As noted above, the trial court may rely upon any factual findings supported by substantial evidence (*Macabeo, supra*, 1 Cal.5th at p. 1212), and a factual finding is supported by substantial evidence when the record as a whole and viewed in the light most favorable to that finding contains evidence that is reasonable, credible and of solid value from which a reasonable judge could make that finding. (*People v. Salazar* (2016) 63 Cal.4th 214, 242.) Although defendant was granted some relief in the second and third level appeals of the May 2018 rule violation, that relief was based on the failure of the prison to ensure that the complaining correctional officer was present in person or by teleconference; the second-level appeal went out of its way to clarify that "[t]he findings of the disciplinary hearing were supported by the evidence presented at the hearing," and

13

the third-level appeal did not disturb that clarification. Given the evidence elsewhere in the record, the trial court had an ample basis for finding that the May 2018 incident occurred. Even if this incident were disregarded, defendant's disciplinary record demonstrated a continued risk of danger to public safety in light of his February 2017 mutual combat, his April 2016 harassment of a female correctional officer, and his still-"elevated" classification score. Second, defendant notes that he obtained a $7,000 walk-away settlement with the California Department of Corrections in federal court in 2014 based on allegations of injury arising from his December 2006 fight with a correctional officer, such that every serious rule violation after that incident is the tainted product of a conspiracy to retaliate against him for obtaining this settlement. This argument is silly. Logically, it makes no sense: Unless the prison officials were clairvoyant, they would have no reason to conspire against him *before* he settled with the Department. Factually, it is based on nothing but speculation and was within the trial court's discretion to reject it as such. (*People v. Ramon* (2009) 175 Cal.App.4th 843, 851 ["[s]peculation is not substantial evidence"].)

Defendant objects to the trial court's characterization of his rehabilitation efforts as "limited." In his view, his efforts are "impressive" and he points to the completion certificates he has received for attending three-months' worth of weekly meetings of Criminals and Gang Members Anonymous, attending a workshop on Exploring the Underlying Causes of Criminality, attending six sessions of a program for inmate veterans, completing a 12-week post-traumatic stress disorder class, and completing a 22-hour course on Alternatives to Violence; his completion of nearly all the college credits he needs to obtain an Associate's degree; and

14

his qualifications and work as a tack welder and kitchen scullery worker as well as a handful of positive commendations for that work. The court erred, defendant urges, by focusing on his lack of effort in addressing his drug and alcohol issues. There was no error. Where, as here, the defendant's criminality can be traced to a "root cause," failing to address that root cause is a basis for concluding that the related criminality will continue. (*Gaston*, *supra*, 74 Cal.App.4th at p. 322 [so noting, when root cause is drug dependency].) Here, defendant has repeatedly acknowledged that his multi-year crime spree was linked to his drug use, yet he has done nothing to address his drug issues beyond attending five one-hour meetings in 22 years. The trial court did not abuse its discretion in weighing this deficiency more heavily than defendant's completion of college credits.

Defendant objects that the trial court misstated his post-release plan when it concluded that he was going to "live with his mother upon release." Defendant complains that he never "expressly state[d]" this plan and that the record also contained evidence that defendant had previously been admitted into three residential transition facilities, such that the record was ambiguous about his plan and the trial court had a duty to further investigate and clarify what defendant's plan actually was. This objection misunderstands both this court's job and the trial court's job. Our job is merely to assess whether the trial court's factual finding regarding defendant's post-release plan is supported by substantial evidence in the record, and here it most certainly is: Defendant (and his mother) repeatedly informed the court that he intended to be a live-in caregiver for his elderly mother and specifically told the trial court that was his plan if released. This constitutes evidence supporting the trial court's

15

finding notwithstanding defendant's admission to the three transition facilities, especially since defendant never indicated that his plan was to live *first* at one of those facilities and *then* with his mother. And the trial court's job is to make factual findings based on the evidence presented, not to investigate or seek clarification of the evidence defendant presents. Defendant also adds that his lack of employment is not enough by itself to pose a risk of danger, but the trial court never so ruled: It looked at the totality of defendant's pattern of criminal behavior, his continued unwillingness to obey the rules, his failure to address the root cause of his criminal behavior, and his plan to put himself back in the same situation upon release (that is, living with an unaddressed drug issue and without any lawful income stream), and concluded that the totality of these circumstances presented a very real risk that defendant would recidivate and thus pose an unreasonable risk of danger to public safety.

    3.    *Reweighing*

Although defendant insists he is not asking this court to reweigh the evidence, many of his arguments urge the court to consider the same evidence before the trial court and to view it differently. For example, he describes many of his custodial violations as "sporadic defiance of prison rules." He characterizes his threat to assault any inmate assigned to him as a cellmate as "inappropriate" and "merely a rude statement"; his numerous instances of masturbating in front of female prison staff amount only to "public indecency" and show that he "needs counseling"; and he excuses his mutual combat with other inmates as "common" among prisoners because "prison is a dangerous environment." At bottom, he is asking us to reweigh the evidence, which is beyond our purview. (*People v. Covarrubias*

16

(2016) 1 Cal.5th 838, 890.)  What is more, defendant's minimization or denial of responsibility for a crime is itself probative of current dangerousness, because it reflects a lack of insight which, in turn, indicates that an inmate remains dangerous.  (See *In re Ryner* (2011) 196 Cal.App.4th 533, 548-549; *In re Shaputis* (2011) 53 Cal.4th 192, 219 [an inmate's criminal history and current attitude regarding that criminal conduct may both be significant predictors of inmate's future behavior in the event parole is granted].)

## DISPOSITION

The order is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.

HOFFSTADT


We concur:


_____, Acting P.J.

ASHMANN-GERST


_____, J.

CHAVEZ