Filed 7/21/21  P. v. Hayden CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>          v.<br><br>ROBERT MICHAEL HAYDEN,<br><br>     Defendant and Appellant. | B306059<br><br>(Los Angeles County Super. Ct. No. PA023303) |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Nancy L. Tetreault, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Robert Michael Hayden (defendant) appeals from the denial of his petition for resentencing under Penal Code section 1170.126 (Proposition 36).[1]  He contends that the trial court abused its discretion in finding him unsuitable for resentencing and denying his petition. As we find that defendant has not demonstrated an abuse of discretion, we affirm the order.

## BACKGROUND

In 1996, defendant was convicted of felony evading a police officer causing injury, in violation of Vehicle Code section 2800.3 (count 1), and taking a car without the owner's consent in violation of Vehicle Code section 10851, subdivision (a) (count 3). The jury found true four prior burglary convictions alleged as one-year sentencing enhancements within the meaning of Penal Code section 667.5, former subdivision (b); and one prior first degree burglary conviction alleged pursuant to the "Three Strikes" law, section 667, subdivisions (b) through (i) and section 1170, subdivisions (a) through (d).  The trial court sentenced defendant to a total of 27 years to life in prison, comprised of two concurrent terms of 25 years to life and one year each for two enhancements alleged under section 667.5, subdivision (b).

In 2013, defendant petitioned for a recall of his sentence under Proposition 36.  Defendant was found eligible for resentencing on count 3, but not count 1, after an eligibility hearing in 2016.  A resentencing suitability hearing was held in February 2020.  After considering the evidence and the argument

---

[1]     All further statutory references are to the Penal Code, unless otherwise indicated.

2

of counsel, on April 28, 2020, the court denied defendant's petition on the ground that he currently posed an unreasonable risk of danger to public safety.

Defendant filed a timely notice of appeal from the order.

**Factual findings**

The trial court issued a memorandum of decision detailing its factual findings from the evidence presented by the parties.[2]

### *Criminal history*

The memorandum of decision includes a summary of defendant's criminal history, which began with a burglary in 1979 when defendant was 12 years old. At age l6, defendant was declared a ward of the court and sent home on probation after resisting arrest, evading arrest, and driving recklessly. At age 18, defendant was convicted of four first degree residential burglaries and initially sentenced to 48 months of probation with 365 days in jail. Following a probation violation defendant was sent to the California Rehabilitation Center (CRC).

In 1987, defendant was convicted of unlawful drug possession, placed on 12 months' probation and fined. One month later defendant was convicted of first degree burglary, received a suspended prison sentence, and was again committed to CRC. While an outpatient from CRC, defendant was arrested for

---

[2]     Defendant does not challenge the factual findings as unsupported by substantial evidence; instead defendant asserts that the findings or inferences drawn are inadequate to support the court's conclusions. Therefore, rather than summarize all the evidence in the record, our statement of facts is a summary of the trial court's factual findings in the memorandum of decision. We later discuss any evidence in the record pointed out by the parties as necessary to address their arguments.

3

narcotic sales, returned to CRC, paroled, arrested again for unlawful drug possession, and excluded from CRC. In 1988, defendant was arrested for spousal abuse but convicted of battery and placed on 24 months' summary probation.

In 1992, defendant was convicted of possession of a hypodermic needle and placed on 12 months' summary probation and four days in jail. One month later, he was convicted of second degree burglary and sentenced to 36 months in prison.

In 1993, defendant was convicted of battery, placed on 24 months' summary probation with 20 days in jail. The same year defendant was convicted of being under the influence of a controlled substance and sentenced to 120 days in jail. Also in 1993, defendant was convicted of petty theft and second degree burglary, sentenced to 48 months in prison, and then convicted of escape and sentenced to 24 months in prison.

Defendant was paroled in September 1995, and in October l995, he was convicted of soliciting the sale of narcotics, being under the influence of narcotics, and possession of narcotics paraphernalia. In March 1996, he was convicted of the current commitment offense. The trial court summarized the facts of the commitment offense in large part from the Court of Appeal opinion in this case (*People v. Hayden* (Sep. 15, 1997, B106150) [nonpub. opn.]), which indicated that two weeks after defendant's mother had reported her car stolen, a police officer observed him driving the car and activated his lights and siren. A high-speed chase ensued through a residential area during which defendant went through two intersections without stopping at stop signs and ultimately collided with another vehicle. The driver of the other car sustained a large cut and other lacerations on the back of his head and briefly lost consciousness. Defendant was thrown

4

from his vehicle and also sustained injuries. In his defense, defendant claimed he borrowed his mother's car intending to return it at some point and that he was not aware that the police were following him.

### *Prison discipline history*

The trial court also summarized People's exhibit 9, the CDCR (California Department of Corrections and Rehabilitation) Disciplinary Record containing defendant's disciplinary history from 1999 to 2018, beginning with the most recent discipline. During the course of defendant's current commitment, defendant had been found culpable of 25 RVR's (serious rules violations reports) and received discipline. In 2017 and 2018, defendant failed to report for health care appointments and to sign a refusal of examination and treatment form. In 2017, defendant possessed inmate-manufactured alcohol in a clear plastic bag and in his toilet. In 2016, defendant and his cellmate were seen fighting and bleeding. In 2014, defendant refused to exit his cell and missed an appointment. In 2012, defendant was in possession of an inmate-manufactured weapon under his mattress. In 2010, defendant was in possession of drug paraphernalia (a syringe with needle and cap) secreted in his rectum. Between 1999 and 2004, alcohol was found in defendant's cell 11 times. On one occasion in April 2003, defendant fought with his cellmate in their cell, and both men smelled of alcohol. In December 2000, defendant was found guilty of obstruction of a peace officer for refusing to return to his cell while participating in a mass "sit-down."

### *Rehabilitative programming*

The trial court also summarized the rehabilitative programming in which defendant participated while

incarcerated, such as Alcoholics Anonymous (AA) from 2015 and into 2018, including a 12-week, "In-Cell" AA program he completed in October 2016. He received several laudatory "chronos" during that period for "being an active participant" and showing "a commitment to help himself." Defendant also completed: Anti-Recidivism Coalition's (ARC) 10-week Youth Offender Mentor Program in January 2018; Criminals and Gang Members Anonymous (CGA) Group in 2017; an eight-week anger management training program in 2016; and a peer education program basic HIV/AIDS information course in 2003. Defendant earned his GED in July 2011. In 2015, he successfully completed the Office Services and Related Technology vocational program, which included courses in shop and site safety, employer expectations, finding and applying for a job, computing fundamentals, keyboarding, key applications, and living online.

### *Work history, classification scores, parole plans*

The trial court summarized the evidence of defendant's prison work history, noting that he had received satisfactory supervisor's reports. The court also noted at the time of the hearing that defendant was 52 years old, and his classification score was 125.[3] Defendant entered prison with a classification score of 81, was at a high of 153 in 2013 and a low of 67 in 1999.

The court found that defendant had been accepted in Fresh Start Recovery Home, a transitional housing program

---

[3] Inmates with lower classification scores require lower security controls and those with higher scores require higher security controls. Scores are reduced for periods without discipline and for satisfactory or better performance in work, school, or vocational training. The minimum classification score is 19.

6

specializing in those reentering the community on parole and suffering from substance abuse or mental health issues. In a letter to the court from the Recovery Network Resource, which runs Fresh Start Recovery Home, Perry Zimmerman wrote that "there is not a time limit on how long he can stay."

During his comprehensive risk assessment (CRA), defendant told the psychologist that he knew he could not succeed alone and needed a strong support group. He was also willing to accept any form of employment. Defendant's sisters provided letters of support, and the court found that one of defendant's sisters was familiar with AA resources in the community and willing to assist and to offer emotional support during defendant's transition (as were two other sisters and a former brother-in-law), but she was unable to provide him a place to live.

### CRA

In January 2020, the CRA was conducted by forensic psychologist Jennifer Soares, who found defendant presented a moderate risk for violence upon release, "largely attached to his substance use and his lack of insight into how his substance use increases his risk of engaging in violent behavior." She also noted that defendant's performance on probation and parole had been poor.

The evaluation included an in-depth history of defendant's use of alcohol, cannabis, cocaine, and methamphetamine from age 16, with occasional alcohol consumption, the use of cannabis every other day, and cocaine, which became his "drug of choice." In prison defendant had received 10 RVR's involving alcohol. Defendant told Dr. Soares that drugs and alcohol had ruined his life and that he stole to pay for his cocaine habit. Dr. Soares

diagnosed defendant with alcohol use disorder, cannabis use disorder, and stimulant use disorder (cocaine), each in a controlled environment.

Dr. Soares found that defendant exhibited six of the seven criteria for antisocial personality disorder: failure to abide by the law, impulsivity, reckless disregard for the safety of others, irresponsibility, aggressiveness, and lack of remorse. These behaviors began when defendant was 12 years old. She also found that defendant had historically displayed all the predictive factors for violent recidivism, three of which remained at least moderately relevant at the time of the report, including violent attitude (moderately relevant), substance use (highly relevant), and performance on supervision (highly relevant). Finally, Dr. Soares noted that defendant had demonstrated minimal acceptance, responsibility or remorse for his commitment offense.

### *Defendant's expert*

The trial court summarized testimony given by Robert Lee Ayers, defendant's expert witness regarding CDCR matters used to assess the risk of recidivism upon release. Ayers reviewed defendant's Central File (C-file), which contains health care records, disciplinary files, any confidential information that may have been collected during defendant's incarceration, and probation reports; as well as criminal history records; the placement letter from Perry Zimmerman; the CRA; a letter from another placement program called PREP; and letters of support. Based on his training, experience, and the materials reviewed, Ayers opined that defendant did not pose an unreasonable risk to public safety upon release. Ayres found that defendant was "a textbook example of a drug addict's life."

8

Due to defendant's high classification score, he was sent to a "Level IV" prison, which generally have more control and fewer activities and programs available to the inmates. However defendant would have had access to the programs available at his prison and Ayres noted that defendant had participated in AA.

Ayers placed defendant's disciplinary history into two categories: those involving violence and those involving chemical abuse. Ayers was of the opinion that defendant's violent RVRs were typical of Level IV prisons where "violent predatory inmates pressure non-violent, weaker inmates into involuntary sex, involuntarily holding contraband, involuntarily participating in violence, and 'paying rent or taxes'"; and that defendant had become the "prey" of such inmates.

Ayers found that defendant's substance abuse-related RVR's were "entirely predictable and typical of a long-time drug addict," and he did not believe that the 2017 RVR for possession of alcohol was a sign of relapse or cause for concern because of defendant's "on-going participation in program activities" such as CGA, AA, as well as having been a youth mentor for ARC. Ayers believed these activities demonstrated that defendant had "turned the maturity corner."

As for public safety, Ayers opined that in order for defendant to be successful in the community and not succumb to the stress of survival by reverting to temptation, he would need "solid release plans." Ayers pointed to the support of his sisters, one of whom had extensive knowledge of AA, and to defendant's acceptance into the Fresh Start program. Finally, Ayers noted that defendant's California Static Risk Assessment (CSRA) score was 1, indicating a low risk of reoffending. Ayers concluded that

9

defendant did not pose any significant risk for endangering the public safety by future criminal behavior.

## DISCUSSION

Defendant contends that the trial court abused its discretion in finding that he currently poses an unreasonable risk of danger to public safety, resulting in a violation of defendant's rights to due process and a fair hearing under the United States Constitution.[4]

Proposition 36, the Three Strikes Reform Act of 2012, created a procedure "whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety." (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167; see § 1170.126, subd. (f).) "The determination whether a defendant poses an unreasonable risk of danger to public safety is discretionary (§ 1170.126, subd. (f)), and . . . '[t]he facts upon which the court's finding of unreasonable risk is based must be proven by the People by a preponderance of the evidence . . . and are themselves subject to [appellate] review for substantial evidence.'" (*People v. Frierson* (2017) 4 Cal.5th 225, 239.)

---

[4] Defendant's due process was satisfied, as he was given notice of the resentencing hearing, an opportunity to be heard, and a statement of reasons for the denial of resentencing. (See *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1299-1300.)

"In exercising its discretion to deny resentencing, the court has broad discretion to consider: (1) the inmate's 'criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes'; (2) his or her 'disciplinary record and record of rehabilitation while incarcerated'; and (3) '[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (g)(1)-(3).) Thus, . . . '[i]n determining whether an offender poses [an unreasonable risk of danger to public safety], the court could consider *any evidence* it determines is relevant, such as the offender's criminal history, behavior in prison, and participation in rehabilitation programs.' (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis of Prop. 36 by Legis. Analyst, p. 50, italics added.)" (*People v. Valencia* (2017) 3 Cal.5th 347, 354.)

It is the defendant's burden on appeal "'to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination . . . will not be set aside on review.'" (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978 (*Alvarez*).) "'[A] decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge."'" (*Id*. at p. 978.) In general, a ruling is not arbitrary and capricious if it "is based upon an 'individualized consideration of the offense, the offender, and the public interest.'" (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.)

11

Defendant contends that the trial court's ruling was an abuse of discretion because the "circumstances did not support the overall conclusion that his history of substance abuse and related criminality made him a current unreasonable risk of danger to public safety, with probation conditions requiring continued substance abuse programming and random drug tests." In particular, defendant suggests that the trial court placed too much weight on defendant's remote history of alcohol and drug addiction and the crimes committed because of his addiction.

Comparing the standard applicable in parole cases, defendant relies on the California Supreme Court's decision in *In re Lawrence* (2008) 44 Cal.4th 1181 (*Lawrence*), to argue that the trial court could not properly rely solely on "immutable" factors, that is, his prior criminal history, to find that resentencing him would pose an unreasonable risk of danger but must find a nexus between the immutable factors and current risk. Defendant argues that the trial court was required to conduct an individualized inquiry by examining all the circumstances of the crime, including the passage of time or other mitigating factors.

This is exactly what the trial court did. Quoting *People v. Esparza* (2015) 242 Cal.App.4th 726, 746 (*Esparza*), which in in turn cited *Lawrence, supra*, 44 Cal.4th at page 1214, the trial court recognized that "[a] petitioner's criminal history is an immutable factor upon which the court may properly rely in assessing a petitioner's dangerousness, as specified in section § 1170.126, subdivision (g)," and that "'the proper focus is on whether the petitioner *currently* poses an unreasonable risk of danger to public safety.'" Thus, as does the defendant here, the trial court relied on parole suitability cases, including *Lawrence, supra*. Quoting *Esparza, supra,* at page 746, which in turn

quoted *In re Lawrence, supra,* at page 1221 and *In re Shaputis* (2008) 44 Cal.4th 1241, 1254-1255, the trial court made clear that it was well aware that a court could "properly deny resentencing under the Reform Act based *solely* on immutable facts, such as a petitioner's criminal history, '*only* if those facts support the ultimate conclusion that an inmate continues to pose an unreasonable risk to public safety[,'] [']when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years [later].'" (Italics added.)

Defendant complains that the "Memorandum of Decision repeatedly relied on [his] substance abuse in explaining why his criminal history, prison misconduct, lack of sufficient rehabilitative programming, and inadequate parole plans made him unsuitable for resentencing." Defendant also acknowledges that "substance abuse provides some evidence of his unsuitability" although he argues that it "does not support an overall conclusion that he current[ly] presents an unreasonable risk of danger to public safety." As we construe defendant's arguments he essentially concedes that the trial court did not rely *solely* on the immutable fact of defendant's prior criminal history or solely on defendant's history of substance abuse but also considered defendant's "prison misconduct, lack of sufficient rehabilitative programming, and inadequate parole plans."

We agree. The trial court reviewed defendant's lengthy criminal history and poor performance on past supervised release and his addiction history. The court acknowledged that defendant was able to connect his substance abuse to the significant negative role it had played in his criminal history, observing that "no amount of punishment has appeared to deter

13

[defendant] from reoffending *including inside state prison.*" (Italics added.) The court considered defendant's RVR's in prison (he had been found guilty of 25 RVR's since 1993) and six RVR's were for fighting or possessing a weapon. The trial court acknowledged that defendant's criminal history did not include violent crimes, and at his current age of 52 years old he presented a reduced risk of violent recidivism. The court also considered defendant's current classification score of 125, which was not his highest but well above the score of 81 he had when he entered prison.

Of concern to the court were the RVR's relating to alcohol, narcotics and narcotics paraphernalia, and that just two years had elapsed since his most recent misconduct. Like the majority of defendant's previous RVR's, they were related to the possession or manufacture of alcohol and committed while defendant was participating in AA. The court cited evidence that in both 2016 and 2017, although defendant complied with giving urine samples, he refused to consent to having them tested. The court also noted that although defendant participated in AA and other rehabilitative programs, his participation was limited and begun only after his petition for resentencing was filed.

Finally, the trial court considered defendant's parole plans, noting his strong family support and that it had also existed throughout his life of repeated relapses and reoffenses. The trial court found defendant's past performance on probation and parole to be indicative of current dangerousness, and although defendant had been accepted into Fresh Start, defendant would be free to leave at any time and fall into his old habits with relative ease.

The court concluded: "In sum, the totality of the record, including consideration of all the statutory factors, demonstrates that resentencing [defendant] at this time would pose an unreasonable risk of danger to public safety."

Defendant suggests that the court failed to take into consideration the passage of time since his commitment offense and asserts that the court failed to "cite a specific factor associated with a prior crime that the defendant has not mitigated in the intervening years." Defendant argues that the court should have placed more weight on the fact that he has not incurred a single RVR for an alcohol-related offense since 2017. Defendant asserts that "[b]y all accounts," he has been "clean from drugs for the past seven years"; and he argues that his continuing in AA since his last known relapse in 2017 provides evidence that he has been sober since then. Defendant then concludes that such a remote criminal history of drug abuse is insufficient to permit the conclusion that he currently poses an unreasonable risk of danger to public safety.

Contrary to defendant's assertion the trial court reasonably considered the 2017 alcohol-related RVR to be such a factor. The trial court reasonably concluded that defendant's continued alcohol abuse during the 24 years of his incarceration, even if episodic, was significant given the relatively short time since the last episode. Indeed the court observed that defendant did not participate in AA until after his petition was filed, and his participation in all rehabilitative programs had been limited. It was reasonable for the court to infer that defendant's commitment to rehabilitation appears to have been insincere.

Defendant suggests that the court should have concluded from his claimed insight into the devastating impact substance

15

abuse has had on his life and from his expressions of remorse to Dr. Soares, that he was ready to overcome this problem. Of course, being ready to overcome a problem does not indicate that adequate progress toward that goal has been achieved. Moreover, as the court observed, defendant was remorseful that he stole from *open* garages, and this expression of remorse was followed by "more or less it's things that people don't notice and it was strictly for drugs." The court could reasonably infer that defendant's remorse was an excuse. It is of interest to note that Dr. Soares found that defendant had not demonstrated minimal acceptance, responsibility, or remorse for his commitment offense. Thus the CRA, which was prepared just four months before the court issued its memorandum of decision, provided another current factor associated with defendant's prior crimes that defendant failed to mitigate during the 24 years of his incarceration.

Defendant takes issue with the trial court's finding that Fresh Start Recovery Home's policy of allowing residents to leave the program at any time creates the risk that defendant would "fall into his old habits with relative ease if he so desired." Defendant contends that the trial court misinterpreted the parole plan for placement in the Fresh Start Recovery Home and that the court misunderstood the law. Defendant asserts that the court's comments showed that it was unaware that postrelease community supervision is mandatory for any inmate released under section 1170.126.[5]

---

[5] Those resentenced under section 1170.126 are subject to section 3451, subdivision (a). (*People v. Espinoza* (2014) 226 Cal.App.4th 635, 639.) Section 3451, subdivision (a) now provides: "Notwithstanding any other law . . . , all persons

16

We disagree that a reasonable interpretation of the court's finding shows ignorance of the law. The court referred to the letter from Perry Zimmerman, in which he states not only that "there is not a time limit on how long he can stay," but also, "[s]ome clients stay for years, some go to school, some go to work . . . ." Thus, residents may leave for work or school. The court could have been expressing concern that placement in that type of facility was premature given defendant's many relapses during his incarceration, including the events of just two years earlier. Defendant has not shown that the trial court misunderstood or was ignorant of the law.

Defendant does not contend that the trial court's factual findings were unsupported by substantial evidence, and his arguments show only that reasonable minds might differ on whether the risk of danger that defendant would pose on release is unreasonable. Where, as here, the record reflects an informed exercise of discretion based on permissible factors, we will reverse only in the extraordinary case where those factors "manifestly support" the conclusion that reasonable minds could *not* differ. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Facts which merely afford an opportunity for a difference of opinion do not establish an abuse of discretion. (*People v. Clair* (1992) 2 Cal.4th 629, 655.) We find that the court exercised its discretion based upon an "individualized consideration of the offense, the

_____

released from prison on and after October 1, 2011, or, whose sentence has been deemed served pursuant to Section 2900.5 after serving a prison term for a felony shall, upon release from prison and for a period not exceeding three years immediately following release, be subject to community supervision provided by the probation department . . . ."

17

offender, and the public interest," in a manner consistent with the letter and spirit of the law, and we thus conclude that the court acted neither arbitrarily nor capriciously.  (*Alvarez, supra,* 14 Cal.4th at p. 978.)

## DISPOSITION

The order denying defendant's petition for resentencing is affirmed.


_____
CHAVEZ, J.

We concur:


_____
ASHMANN-GERST, Acting P. J.


_____
HOFFSTADT, J.